ROBERT JAMISON *v.* ILLINOIS CENTRAL RAILROAD COMPANY.

| 63 | 33 |
| 71 | 240 |
| 63 | 33 |
| 73 | 330 |

1. RAILROAD COMPANY. *Liability of for causing death of child.*
   Where, in an action for damages against a railroad company for killing a child while walking on its track, it is shown that a servant of the company stationed as a "lookout" on the train saw the child before the accident, but failed to exercise due care to avoid the injury, the company is liable, however negligently the child may have acted.

2. SAME. *Action for damages. Practice.*
   And whether such servant saw the child is a question of fact for the jury, and if there be sufficient evidence, if believed, to support a verdict founded on such fact, then the judge is not authorized to instruct the jury to find for the defendant.

3. EVIDENCE. *Credibility of witness. Contradictory statements.*
   Where, in an action for damages against a railroad company for killing a child

63 MISS.—3

walking on defendant's track, it is a material fact whether the servant of the company saw the child before the accident, then his statement to third persons that he did see the child is admissible to attack his credibility if he denies having seen the child.

APPEAL from the Circuit Court of Hinds County.

HON. T. J. WHARTON, Judge.

This is an action of trespass on the case against the Illinois Central Railroad Company for damages for the killing of a child of seven years of age while walking on the company's railroad track in the city of Jackson. The action is brought by Robert Jamison, the father of the child. The judge in the court below instructed the jury to find for the defendant. The plaintiff appealed.

*B. H. Wells* and *H. Peyton,* for the appellant.

1. If the children were negligent in going upon defendant's track and in not keeping a lookout for passing trains, could not the defendant, by exercising even *ordinary* care and skill, have avoided the killing? In Shearman and Redfield's excellent work on Negligence, they say, in speaking of the doctrine of contributory negligence, " One who is injured by the mere negligence of another cannot recover at law * * * except where the direct cause of the injury is the omission of the other party, after becoming aware of the injured party's negligence, to use a proper degree of care to avoid the consequences of such negligence." Shearman and Redfield on Neg. 25, n. 2; 19 Am. and Eng. R. R. Cases 96, 105-11; Wharton on Negligence, §§ 314, 330, 341, 348; 64 Mo. 437. Or they are liable if they so negligently run their trains as to prevent their seeing ahead. 65 Mo. 26.

Even the plaintiff's negligence is no bar if accident could have been avoided by exercising reasonable care. Wharton on Neg., § 388; *Brown* v. *Hannibal and St. J. R. R.,* 50 Mo. 461.

The evidence tends strongly to show that the children must have been seen by the brakeman, Jack Jones (the man who had been sent on top of the car of cotton to keep a lookout), although he says he did not see them.

We contend that if Jack Jones did see the children, and failed to signal the engineer to stop, or attempt to check the train, or *do*

*something* to prevent a disaster, he was guilty of culpable negligence—negligence to a degree of wantonness, and the company was liable.

2. The court permitted the company to escape all the liability by accepting as *absolutely true* the statement of Jones that he did not see the children, assuming to itself this province of the jury. If this rule would prevail, and we were forced to rely on eye-witnesses to rebut the statements made by the railroad employees, and, as in this case, cut off from showing by circumstances—and circumstances so conclusive—that their statements are not true, then it is to permit them to introduce their hired servants, have them say, "I did not see," and effectually close the doors of justice.

*H. Peyton* also made an oral argument.

*D. Shelton,* on the same side.

1. When the court instructed the jury " *to find a verdict for defendant,*" if that instruction was based on *supposed absence of negligence,* the court thereby decided *all* questions about negligence that under the definition of negligence could be urged on the evidence ; for example, the *court* decided that the negro on the cotton bales did not *see the children,* or that if he did see them and yet nothing was done to avoid the impending catastrophe, that was no negligence, for, says the court, the manager of a train under the dangerous surroundings of this event owes nothing to protection of human life and person except to keep on one of its tracks ; they may safely for the company close their eyes and ears and fold their hands to everything else ; and the company can with equal safety put a fireman in charge of an engine and cars if he can open and close the valves, and close his eyes, ears, and hands to every danger.

2. But if there was any doubt about negligence or want of vigilance and care, or *the degree of these,* that was a question of fact to be solved not by the court, but by the jury under instructions from the court, defining negligence and its grades.

*D. Shelton* also argued the case orally.

*W. P. & J. B. Harris,* for the appellee.

1. The exception which the law makes in favor of infants is

this: When a child is *seen* on the track a higher degree of care is required than when an adult is *seen* on the track under the same circumstances. There is no rule of law, and it would be absurd to say that the law requires the company's employees *to see* an infant on the track when they would not under like circumstances be required *to see* an adult. Now one defense made by the company in the case *at bar*, and which was completely established, was that the killing was purely accidental on its part; that it did not see the child or have any notice or warning that it was on the track until it was run over. That it violated no duty to the child, having a perfect right to presume that its track was clear at that point. The question is not whether they could have seen the child, but did they see? Having established the fact that they did see, then the question arises, did they use the degree of care which the circumstances required. The point, however, upon which counsel for appellant lays much stress, and the point upon which he insists the case should have gone to the jury, is this, George Allen, one of the plaintiff's witnesses, testified that he *believed* the brakeman, Jones, did see the child. This was simply an opinion based upon his belief that the child might have been seen from the brakeman's position.

But Jones says, in the most positive and emphatic manner, that he did not see the children and did not know that they were struck until the train was " overhauled." This is the only thing in the case from beginning to end that savors of conflict.

2. There was nothing for a jury to decide in this case, there was no conflict in the testimony, and the court did right to instruct for the defendant. The court would not have allowed a verdict against the road, under the facts shown, to stand. In no view of the case could the plaintiff hold the company liable. As to the action of the court, see Rorer on Railroads 1038–1054, 1065, 1062–1075, 1081; 24 N. Y. 430; *Doyle's Case*, 60 Miss. 977; *Backwood* v. *R. R. Co.*, 59 Miss. 280; see also *Schofield* v. *Chicago, etc., R. R. Co.*, decided by Supreme Court of the United States May 4, 1885, and reported in the Albany Law Journal for July, 1885.

*The court did right in excluding* the testimony of witness, Wil-

liam Hayes. See *V. & M. R. R. Co.* v. *Nat. McGowan*, MS. opin-
ion (at the conclusion of the opinion).

*J. B. Harris*, of counsel for the appellee, argued the case orally.

COOPER, C. J., delivered the opinion of the court.

On the trial of this case in the court below a peremptory instruc-
tion was given to the jury to find for the defendant. This was not
authorized under the facts disclosed by the evidence for the plain-
tiff.

According to the testimony of the witness Allen, Jack Jones, the
brakeman, who had been stationed as a lookout on the rear car
of the train, which was backing on the switch and by which the
death of the plaintiff's child was caused, was standing near the
rear end of that car looking in the direction of the children, who
were walking along the track unconscious of their danger. It seems
that all other persons near the scene of the accident saw and ap-
preciated the danger which was impending and attempted to warn
the children of its approach. All the witnesses concur in the state-
ment that there was no obstacle to interrupt the view of the chil-
dren by Jones. If he was where Allen says he was, and if he
was looking in their direction, as Allen declares that he was, the
jury would have been justified in finding that he did see them.
Seeing them in their dangerous position, unconscious of their dan-
ger, it was clearly his duty to make some effort to avoid the injury,
and however negligently they may have acted in getting on the
track, the defendant was liable if its servants, knowing their
position, failed to exercise due care in preventing the accident.
It is true that Jones denies that he saw them; but whether he
did or not was a question of fact to be decided by the jury and
not by the court, since there was sufficient evidence, if believed
by it, to support a verdict based upon the assumption that he did
see them.

It was error to exclude the evidence offered by the plaintiff that
Jones stated to Will Hayes, Moore, and others, that he saw the
children before the accident occurred. It is true that Jones did
not deny the fact of having so stated, but said that he did not

remember having done so, and if he did that he was only joking. Whether he saw them was a material fact, and having denied that he did, it was competent for the plaintiff to attack his credibility by showing that he had made conflicting statements to other persons.

*The judgment is reversed and cause remanded.*