# ALABAMA & V. RY. CO. *v.* KELLY.

[88 South. 707, No. 21786.]

1. RAILROADS. *Evidence of negligence as to boy on track held sufficient for jury.*

Where in an action for damages against a railroad company for the killing of a twelve-year-old boy walking on the end of the cross-ties the testimony shows that the engineer of the train was on the lookout and had an unobstructed view of a distance of several hundred yards to the point where the boy was walking on the track, and the testimony of the engineer is that, if he had seen the boy at the point where the plaintiff's witnesses testify the boy was walking, he would have known and appreciated the fact that the boy was in danger of being struck by the train and would have stopped the train, the jury could believe from this testimony that the engineer saw the boy on the end of the cross-ties, understood and appreciated his danger, and that the boy was unaware of his peril; and this testimony was sufficient to warrant the jury in finding that the engineer was guilty of gross negligence in failing to stop the train before striking the boy.

2. TRIAL. *Introduction of testimony by defendant held waiver of peremptory instruction.*

Where a defendant in the circuit court, at the conclusion of the introduction of the testimony for the plaintiff, makes a motion to exclude this testimony and for a peremptory instruction, which is overruled by the court, and the defendant then proceeds to introduce its testimony, the introduction of the testimony by the defendant is a waiver of its right to have this court pass upon the propriety of the exclusion of plaintiff's testimony at the time the motion was presented.

3. DEATH. *Thirty thousand dollars held excessive for death of deaf and dumb boy.*

The verdict of a jury for thirty thousand dollars consisting of actual and punitory damages for the wrongful death of a twelve-year-old deaf and dumb boy is grossly excessive, and this court will not permit a recovery of over twenty thousand dollars in the case.

APPEAL from circuit court of Scott county.

HON. A. J. MCLAURIN, Judge.

Action by H. E. Kelly against the Alabama & Vicksburg Railway Company to recover for the death of William G. Kelly. Judgment for plaintiff, and defendant appeals. Affirmed, with *remittitur*.

*Sydney L. McLaurin, Fulton Thompson, R. H. Thompson* and *J. H. Thompson,* for appellant.

We shall first present and discuss those assignments of error which in our judgment go to the whole case and which, if sustained, will result, as we think, in a final disposition of the case in appellant's favor, presenting the other assignments of error afterwards.

First. The court below should have sustained the appellant's motion made when plaintiff rested his case to exclude the testimony and direct the jury to return a verdict for the defendant. Second. The court below should have instructed peremptorily for the defendant as requested to do at the conclusion of all the evidence. *Thornhill case,* 160 Miss. 541.

Since the United States supreme court (in 1910) delivered its opinion in *Mobile, Jackson & Kansas City Railroad Company* v. *Turnipseed,* 219 U. S. 35, on writ of error from this court, it has decided several cases pertinent, and some of them we believe controlling, on the question now under consideration, to which we call attention.

We will now show that the application by the trial court of the *prima-facie* statute to the case at bar denied the defendant railway company a substantive right and this we do by the decisions of the United States supreme court. *Central Vermont Railway Company* v. *White* (decided June 21, 1915), 238 U. S. 507; *McNeil* v. *Holbrook,* 12 Pet. 89; *Phillips* v. *Grand Trunk Ry.,* 236 U. S. 662; *Boyd* v. *Clark,* 8 Fed. Rep. 849; *Howell* v. *Horwick,* 14 Mass. 188; *Cooper* v. *Lyons,* 77 Tenn. 597 (2); *Newcombe* v. *Steam-*

*boat Co.,* 3 Iowa (G. Greene), 295; *Railroad* v. *Gladmon,* 15 Wall. 401 (1), 407-408; *Hough* v. *Railway Co.,* 100 U. S. 225; *Inland etc.* v. *Tolson,* 139 U. S. 551 (4), 557; *Washington etc. R. R.* v. *Harmon,* 147 U. S. 581; *Hemingway* v. *Ill. Cent. R. R.,* 114 Fed. Rep. 843; *Seaboard Air Line Railroad Co.* v. *Moore,* 228 U. S. 434; *New Orleans & Northeastern Railroad Company* v. *Harris,* 247 U. S. 367 (decided in 1918) ; *Central Vermont Railroad Co.* v. *Harris,* 247 U. S. 367 (decided in 1918) ; *Central Vermont Railway Company* v. *White,* 238 U. S. 531; *Harris Case,* 247 U. S. 367; *New Orleans & Northeastern Railroad Company* v. *Scarlett,* 249 U. S. 528.

The decisions of the United States supreme court cited by us show that in the opinion of the greatest court on earth the *prima-facie* statute, if enforced and applied deprives a litigant of something more, of a greater right than is involved in mere procedure or a mere rule of evidence; it deprives of a substantive right awarded other litigants, and, therefore, deprives him of his property without due process of law and denies him the equal protection of the laws, contrary to the constitution of the United States. Mobile, Jackson & Kansas City Railroad case, the supreme court of the United States (219 U. S.)

If we be correct the court below should have instructed the jury to return a verdict in the defendant's favor.

But aside from the validity of the *prima-facie* statute the peremptory instruction asked for by defendant at the close of all the evidence should have been given because the defendants' witnesses fully and uncontradictedly, proved that plaintiff's afflicted son was not killed by the negligence of defendant's servants or any one of them.

Whatever burden the statute, if valid, placed on defendant was fully met as hereinbefore shown. *Vicksburg, etc. R. Co.* v. *Phillips,* 64 Miss. 693; *New Orleans, etc. R. Co.* v. *Bourgeois,* 66 Miss. 3; *Bedford* v. *Louisville, etc. R. Co.,* 65 Miss. 385; *Owen* v. *Illinois, etc., R. Co.,* 77 Miss. 142; *Nichols* v. *Gulf, etc., R. Co.,* 83 Miss.

*Wood Eastland* and *J. W. Cassedy,* for appellee.

Before discussing the question of the constitutionality of section 1985 which is the first question argued by the appellant under the above heading, we deem it necessary and respectfully submit to the court the case as proven under both the facts and the law was a case of liability. *N. & O. M. & C. R. Co.* v. *Harrison et al., Railroad Company* v. *Hawkins,* 32 Miss. 211; *Harrison* v. *R. W. Co.,* 93 Miss. 40; *Jamison* v. *I. C. R. Co.,* 63 Miss. 33; *Y. & M. V. R. R.* v. *Smith,* 71 So. 752; *Fuller et al.* v. *I. C. R. R. Co.,* 65 So. 783; *G. & S. I. R. R. Co.* v. *Boone,* 82 So. 335; *Bell* v. *So. R. R. Co.,* 30 So. 821; *Laurel Mercantile Co.* v. *Mobile & Chicago R. Co.,* 87 Miss. 675; *Issabelle* v. *I. C. R. R. Co.,* 25 So. 1037; *Potera* v. *City of Brookhaven,* 95 Miss. 775; *Westbrook* v. *M. & O. R. R. Co.,* 66 Miss. 560; *R. R. Co.* v. *Hawkins,* 105 Miss. 18; *R. R. Co.* v. *Hawkins,* 82 Miss. 209.

The motion of the appellant for a peremptory instruction and the peremptory instruction requested by the appellant were each properly refused in the court below, for the reason as shown above that there was ample testimony both when appellee rested his case and at the close of all the testimony for both appellant and appellee.

On the question of the constitutionality of section 1985, Code 1906 as amended, we desire to call the court's attention, first, to the state of the record. Six eye-witnesses were introduced by the appellee who gave in detail their version of how William Kelly was killed by the appellant's servant in the operation of its train. On the other side, two witnesses the engineer and the fireman, on behalf of the railroad company gave their version of how William Kelly was killed by appellant's train. The statement given and the circumstances proven by the appellee and the statement given by the witness for the appellant were in hopeless conflict. If the testimony of the appellee should be accepted as true there was and is an undoubted case of liability. On the other hand, if the testimony of the appellant should be accepted as true, there was not a case

of liability. In other words, this was not a case of accident unexplained.

It has been repeatedly held by this court that in cases where all the facts have been introduced the presumption arising by reason of said section must yield to the facts and the jury will be required to try the case on the facts proven. *Ala. & V. R. R. Co.* v. *Thornhill,* 106 Miss. 389; *Ala. G. So. R. Co.* v. *Daniell,* 108 Miss. 368.

We therefore answer counsel's argument as to whether or not section 1985 is or is not constitutional by showing to the court that this question cannot be raised in this case on this appeal.

If this court should determine that the question as to whether or not section 1985 of the Code of 1906, is or is not unconstitutional can be raised on this record, then we respectfully call the court's attention to the recent case of *N. O. M. & R. R. Co.* v. *Cole,* 101 Miss. 173, in which this court on the identical question holds: "Code 1906, section 1985, which raises a presumption of negligence upon the proof of an injury received from a running train and cast upon the railroad the burden of rebutting the presumption, is not in violation of. constitution United States Amendment 14, in depriving railroads of the equal protection of the laws or depriving them of property without due process of law.

In addition to this case the United States supreme court in the case of *Mo. Jack & Kansas City R. R. Co.* v. *J. A. Turnipseed* reported in 55 Law Edition at page 78, is a case involving the identical question now raised by counsel and decided by this court in *Coal case, supra,* says: "Neither the equal protection of the laws nor due process of law is denied by Mississippi Code 1906, section 1985, under which the actions against railway companies for damages done to persons or property proof of injury inflicted by the running of locomotives or cars is made *prima-facie* evidence of negligence."

The same idea was announced by the supreme court of the United States in *Fong Yue Ting* v. *United States,* Re-

ported in 37 Law Ed. at page 905, this question is taken from the foot of page 917 and the top of page 919. The provision which puts the burden of proof upon him of rebutting the presumption arising from his having no certificate as well as the requirement of proof, by at least one credible white witness who was a resident of the United States at the time of the passage of this act, is within the evidence which shall be received, and the effect of that evidence in the courts of its own government, citing: *Ogden* v. *Sanders,* 25 U. S. 12, 6 Law Ed. 606; *Pillar* v. *Roberts,* 54 U. S. 13, 14 Law. Ed. 228; 125 *Baskets of Champagne* v. *United States,* 70 U. S. 3, 8 Law Ed. 116; *Ex parte Fisk,* 113 U. S. 713, 28 Law Ed. 1117; *Holmes* v. *Hunt,* 122 Mass. 505.

We respectfully take issue with counsel on his statement that any of the decisions of this honorable court have enlarged upon section 1985. As we understand the cases cited by him, as decided by this honorable court they do nothing more than announce the plain meaning of that statute. There is nothing as we read them in the cases cited by counsel that had not already been decided by this honorable court in its previous decisions. All of the United States cases cited by counsel were cases arising under the point. The state courts were given by this act concurrent jurisdiction with the United States court in the enforcement of this act of Congress, and while so engaged litigants everywhere were entitled to have their causes tried in accordance with the same rule and the same law, and for this reason the United States court held that since such litigants were not entitled to the benefits of the *prima-facie* statute in some of the courts, and particularly in the United States court, and that the state court being engaged in the enforcement of the Employer's Liability Act with concurrent jurisdiction that, in such cases the litigants in this court would likewise be required to try their cause in accordance with the rules and regulations as announced and prescribed by the United States court. Not only has the United States court adopted this rule

with reference to section 1985 but it has also adopted the same rule in a recent case with reference to the nine jury verdicts, and if called upon to do so, would likewise hold that the statute abolition of the fellow-servant doctrine would not apply, and it would also hold that the state's abolishing of the assumption of the risk would not apply. To so hold however, would in no degree, argue that any of such acts have been unconstitutional. In fact all of said acts have been and are now sustained by the court as being constitutional.

To determine the constitutionality of all these sections the question is to be resolved on the power of the legislature to segregate its citizens into certain classes and to legislate with reference to such classes, and not upon the idea that it does or does not seek to control by such legislation substantive rights. The legislature is only required in such cases to base its classification upon reasonable grounds and in this case the ground of classification as to whether it is reasonable or not, is the proper basis upon which to determine as to whether or not section 1985 and all the other sections above referred to are constitutional or not.

We therefore respectfully submit that appellant's contention with reference to the constitutionality of section 1985 is not involved and if incorrect in this, that said section is constitutional.

SYKES, J., delivered the opinion of the court.

The appellee, H. E. Kelly, instituted suit in the circuit court of Scott county against the appellant railway company for damages for the alleged wrongful death of his son, William G. Kelly, a deaf and dumb boy about twelve years old, who was run over and killed by a train of the defendant railway company a short distance west of the corporate limits of Jackson. The jury returned a verdict in favor of the plaintiff for thirty thousand dollars, upon which judgment was entered in the circuit court, and from which judgment this appeal is here prosecuted.

The material facts, briefly stated, are as follows: William G. Kelly, a minor about twelve years old, was an inmate of the Deaf & Dumb Institute in Jackson. One Sunday morning between ten-thirty and eleven o'clock this boy with several other deaf and dumb boys started from this institute to a pool to go in swimming. The testimony for the plaintiff in the lower court was to the effect that Kelly and two other boys got upon the railroad track at or near a crossing near the institute grounds, and that Kelly walked from this crossing to the point where he was killed on the end of the cross-ties with his head down. Two other boys walked part of the way on the railroad track and the others walked near the track. The boy was struck and killed by a west-bound passenger train of the defendant at a culvert. The distance from where the boy got on the railroad track to the place where he was killed, according to the testimony of a civil engineer who testified for the appellant, is six hundred and eighteen yards. There is a curve in the railroad which extends west of the crossing, and, according to this same engineer's testimony, it is two hundred and ninety-nine yards from the end of the curve to the point where the boy was killed. It was testified by some of these deaf and dumb boys that while the train was in some part of the curve it sounded a whistle for one of the boys on the track, and that it also sounded its whistle a second time either for the road crossing or at one of these boys. This testimony is explained by these little boys stating that they were looking at the engine and knew from the exhaust of the smokestack that the whistle was being blown. They testified that about this time the other two boys got off the track, but that the deceased continued to walk on the end of the cross-ties with his head down until he was struck and killed.

Two of these boys, appreciating the peril of the deceased, attempted to run to him and warn him of the approach of the train, but failed to reach him in time.

It is also testified by some of these mutes that the speed of the train was not checked until after the boy was struck,

but that the train continued at the same rate of speed, which the engineer testified was thirty miles an hour.

The testimony shows that after the train emerged from the curve the engineer had an unobstructed view of the track; that the deceased was then about two hundred and ninety-nine yards from the train. The testimony of the engineer shows that he could have stopped the train within a shorter distance than this. The engine knocked the boy into the culvert, and he was picked up by the train crew in an unconscious condition and immediately brought to Jackson. He never regained consciousness and died before reaching Jackson.

These deaf and dumb eyewitnesses were all young boys about the age of the deceased and had not progressed very far in their education at the institute. Mr. Scott, the superintendent of the institute, was appointed interpreter by the court, and it is apparent from the record that in order to make these boys understand the questions in some instances it was necessary that they be asked leading questions.

At the conclusion of plaintiff's testimony the motion of the defendant to exclude it and for a peremptory instruction was overruled by the court. After this was done the engineer and fireman testified for the defendant. The testimony of the engineer in substance was to the effect that before getting to the curve he sounded the alarm for the road crossing; that his view was then obstructed because of the curve; that after rounding the curve he saw the deceased running west on the right of way, but five or six feet from the end of the cross-ties and in a place of safety. He states that up until the time he applied his brakes in emergency and blew his whistle and did what he could to stop the train the boy had been in the clear of the track and was not in danger. He testified that he was on the lookout, and that if the boy had been walking on the end of the cross-ties there was no obstruction which would have prevented him from seeing him, and that because he was not on the cross-ties is the reason he did not do any-

thing to stop his train; that if he had seen him on the cross-
ties he would have acted differently and it would have been
his duty to stop.   He admits this on cross-examination.
Save for being deaf and dumb, the deceased was a normal
healthy child who helped his parents when at home with
their work.

Plaintiff's testimony also showed that deceased was bare-
footed, and that the right of way beyond the end of the
cross-ties was rough and uneven and contained a lot of
pieces of slag or other kind of stone.   The other testimony
is not material.  At the conclusion of the introduction of
all of the testimony the defendant asked for a peremptory
instruction.

It is first contended by counsel for appellant that 'at
the conclusion of the introduction of the plaintiff's tes-
timony its motion to exclude the testimony and for a per-
emptory instruction should have been sustained; that the
circuit judge at that time erroneously stated that the Mis-
sissippi *prima-facie* statute applied.   It is not necessary
for us to consider whether or not this motion should have
been granted at that time, because the defendant intro-
duced its testimony, and by doing so waived the right·to
stand alone upon the testimony of the plaintiff.

Upon the motion for a peremptory instruction at the
conclusion of all the testimony, viewed most favorably for
the plaintiff because the jury adopted the plaintiff's theory
of the case, it shows that the engineer was on the lookout;
that he sounded his whistle at the little boys on the track;
that he necessarily is bound to have seen the deceased walk-
ing on the end of the cross-ties with his head down, in a
place where he would be struck by the train; that this
little boy was apparently unaware of the approaching
train.   In fact, the engineer admits that, if he had seen
the little boy where the witnesses for the plaintiff said he
was walking, he would have understood and recognized
that he was in danger of being· struck by the train and
would have done everything in his power to stop the train
and prevent the injury.   This admission of the engineer

.with the testimony of the plaintiff was amply sufficient, under the well-established rules as enunciated by this court, to submit the case to the jury. In this case the jury was justified in believing that the engineer saw the boy for a distance of at least two hundred and ninety-nine yards in a place of peril, and that the engineer knew and understood that the boy was in a place of peril and was unconscious of his danger, and, appreciating these facts, that he did nothing at that time to prevent the injury. This justified the jury in believing that the engineer was guilty of gross negligence. *Jamison* v. *I. C. R. R. Co.,* 63 Miss. 33.

It is earnestly insisted by counsel for the appellant that the construction placed upon the *prima-facie* statute by the circuit judge at the conclusion of the introduction of the testimony for the plaintiff was incorrect, or that, if it were a correct enunciation of the law by this court, then the statute is unconstitutional.

We are not called upon in this case to pass upon this question for the reason that by the introduction of its testimony the defendant waived its right to stand upon the testimony alone introduced by the plaintiff, and the plaintiff did not invoke this statute by his instructions.

There are objections urged to the instructions given plaintiff, but after a most careful consideration of them we do not find any error therein. There were also certain objections made in the motion for a new trial to the method in which the jury was drawn and impaneled. No objections were interposed to the jury or to the impaneling at the proper time by counsel for the appellant. There is no testimony to show that the case was not tried by a fair and impartial jury. The jury laws in this state are directory, and in the absence of any specific objections when the jury is being selected or upon proof that there was not a fair and impartial jury impaneled in the case, this general objection cannot be sustained.

It is also earnestly insisted that the court should not have permitted leading questions to be asked the deaf and

dumb witnesses, but we think the record shows that this was necessary in order that their minds might be directed to the question.

It is also insisted that, because Mr. Scott was the head of the institute where this boy was a pupil, and that he had written a letter, supposedly to counsel for plaintiff, informing him that some of the railroad attorneys would be at the institute at a certain time to investigate this matter, and suggesting that the attorneys for the plaintiff also be present, Scott for these reasons was prejudiced and biased in favor of the plaintiff, and should not have been appointed as interpreter by the court. The testimony shows that the attorney for the defendant had present with him during the examination of all of these deaf and dumb witnesses, except one, a private interpreter, and there is no indication whatever in the record to show that Mr. Scott did not fairly, accurately, and impartially interpret the questions and answers. The fact that he may have been in sympathy with the plaintiff would not disqualify him from acting as the interpreter when there was no suggestion made during the trial that he had not correctly and honestly performed these duties.

It is next contended that the verdict of the jury is grossly excessive, and this is the only serious question to our minds presented in the record. There was a recovery of thirty thousand dollars as actual and punitory damages for the death of a twelve year old deaf and dumb boy who was in good health and otherwise normal. His life expectancy is not shown by the record. The serious question presented here is whether this court should reduce the amount of this verdict, which consists of punitory as well as actual damages. The awarding of punitory damages in a proper case is within the discretion of the jury; and when a jury see fit to award damages of this character, which are in the nature of a punishment as well as a public example to deter others from acting in a similar way, a large latitude is necessarily permitted. This court, however, has on a number of occasions adjudicated that ver-

dicts including punitory damages were excessive. To our minds this verdict is so grossly excessive as to be shocking. After a most careful consideration, we have concluded that we cannot permit a judgment for over twenty thousand dollars to stand in this case. If the plaintiff will remit ten thousand dollars of this judgment, the cause will be affirmed; otherwise it will be reversed and remanded.

*Affirmed with remittitur.*