ILLINOIS CENT. R. Co. v. MANN.

(Division B. Feb. 23, 1925.)

[102 So. 853.   No. 24657.]

1. RAILROADS. *Whether fireman saw injured person held question for jury.*

   Where the plaintiff in a personal injury suit testifies that he was at a point on a railroad track at the time of the injury where he would have been seen, if a lookout were maintained, and the fireman testifies that he was keeping a lookout at the time, and did not see the injured person, and would have seen him, had he been at such point, in sufficient time to stop the train, it is a question for the jury to determine whether the fireman did see him in fact.

2. RAILROADS. *Care required to prevent injury to trespasser after discovery in peril.*

   While a railroad company, in the operation of its trains is not required to keep a lookout for trespassers, and owes them no duty,

except not to willfully or wantonly inflict injury upon them after their discovery in a position of peril, still its servants, if they see a trespasser in a position of peril, must do all reasonably possible to prevent the injury after such discovery.

*Headnotes 1. Railroads, 33 Cyc., p. 902; 2. Railroads, 33 Cyc., pp. 787, 795.

Appeal from circuit court of Tishomingo county.
Hon. C. P. Long, Judge.

Action by Etha Mann, by next friend, against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

*May, Sanders & McLaurin,* for appellant.

Was the plaintiff entitled to go to the jury on the last clear chance doctrine? If we can establish a negative answer to that question we are entitled to have the case reversed and judgment entered here for appellant.

If the engineer and fireman did not tell the truth they were guilty of a crime in running the train onto the sleeping child after observing his perilous position. In the case of *Y. & M. V. R. R. Co.* v. *Huff*, 111 Miss. 491, this court in passing on a similar question said: "In our judgment the engineer in the instant case has met all the requirements of this rule. To hold otherwise would convict him of manslaughter. It is hard to believe that a responsible engineer would gamble with the life of a child of tender years; and that he did not, in this case, is manifest from the undisputed testimony."

If the engineer and fireman told the truth they did not see the plaintiff and as he was a trespasser they owed him no duty except not to wilfully or wantonly injure him if and when they should discover his position of peril on the track.

If the plaintiff told the truth and the engineer and fireman told the truth, the defendant railroad was not liable because they testified that they were not aware of

the presence of the plaintiff on the track and they were not legally bound to see him at their peril because they were under no duty to keep a lookout for trespassers.

There is nothing in the record to impeach the testimony of the engineer and fireman. There was not the slightest circumstances shown to warrant the inference that they were not telling the truth, hence it must be assumed that they did tell the truth, and if so there was no liability shown.

There was no liability shown because neither the engineer nor the fireman saw the child and hence there was no duty resting upon them to stop the train. The true rule in such cases is well stated by our court in one of the earlier cases. *Ry. Co.* v. *Williams,* 69 Miss. 641. This rule was followed and approved by the court in *Y. & M. V. R. R. Co.* v. *Smith,* 111 Miss. 471; *Y. & M. V. R. R. Co.* v. *Huff,* 111 Miss. 486.

In the Williams case plaintiff was a seven-year-old girl who had been to visit at a neighbor's, was taken sick with a chill and fever, and returning home along the railroad track was overcome with drowsiness and lay down on the track and went to sleep. As the train approached the engineer saw the child on the track but did not discover that it was a child until too close to stop the train in time to prevent injury.

In the *Huff case, supra,* a little negro boy four years old strayed on the track of a railroad company and apparently went to sleep and was struck by the train. The engineer testified that he saw the object on the track but did not realize that it was a human being when he first saw it and made no effort to stop his train until he discovered that it was a child; that it was then too late to stop the train in time to prevent the injury. The court concluded in that case that the peremptory instruction requested for the defendant should have been granted and accordingly entered judgment for the appellant.

The appellant questions the presence of the appellee asleep on the track, but if it be conceded that he was, there is no liability because the employees in charge of the operation of the train did not see him in his perilous position and hence owed him no duty to stop the train and relies on the *Williams case,* the *Huff case* and the *Smith case, supra.*

*W. C. Sweat,* for appellee.

Etha Mann is a little boy who was between seven and eight years of age at the time the injury, which is complained of, occurred. The proof, as shown by the citizens of the town, is that, ever since the railroad had been built, some thirty-five or forty people per day had been going along this track, crossing in this path, and going up and down the path on the east side of the track where the plaintiff was lying. They further show that, for years, it had been the custom of children to graze their cattle along this track, without any objection from the railroad company so far as the record shows.

It is shown conclusively by the testimony that the plaintiff received his injuries by being struck by one of the defendant's trains in the town of Belmont. Practically ever since the railroad had been built, boys and girls had been daily grazing their cows along the right-of-way at this point, and there was no protest from the railroad company so far as the record shows. It, therefore, became the duty of the employees in charge of the train to keep a look-out at this point for parties who might be on the track. *I. C. R. R. Co.* v. *Dillon, et al.,* 111 Miss. 520, 71 So. 809; *Allen* v. *Y. & M. V. R. R. Co.,* 71 So. 386.

If the boy was in the position in which he was lying, as found by the jury, the engineer in charge of the train, if he was looking ahead, as he testified he was, should have seen the plaintiff in a position of peril; and, if he failed to do so, he was guilty of gross negligence for

which the railroad company will be liable for his injury. *A. & V. R. R.* v. *Kelly,* 126 Miss. 276, 88 So. 707; *Jamison* v. *I. C.,* 63 Miss. 33.

Since the jury by its verdict adopted the plaintiff's testimony and theory as to his position, then he had a right to believe that the employees in charge of the train either recklessly overlooked and failed to see the plaintiff in a position of peril, when with ordinary care, they should have seen him; or, that they did see the plaintiff in a position of peril in time to have stopped the train and wilfully failed to do so.

It is well settled by this court that the railroad company owes no duty to a trespasser, except to refrain from wilfully injuring him; but it is equally well settled by this court that the railroad company must not wilfully or wantonly injure a person on its track. These two principles work together, and are in harmony, and they are well stated by the court in the case of *Railroad Company* v. *Harrison,* 105 Miss. 18. See, also, *R. R. Co.* v. *Hawkins,* 82 Miss. 209, 34 So. 323; *Harrison* v. *R. R. Co.,* 93 Miss. 40, 46 So. 408; *Fullers* v. *I. C. R. R. Co.,* 100 Miss. 705, 56 So. 783.

Considering plaintiff's injuries, the verdict is exceedingly small; and, conceding that plaintiff was guilty of contributory negligence, if a child of his years could be guilty of contributory negligence, under our statute this does not bar recovery.

No error was committed by the court below.

*May, Sanders & McLaurin,* in reply, for appellant.

It is argued the engineer was put on notice that some person was likely to be at this point, and therefore, was under duty to be on the lookout and was guilty of negligence if he failed to look and see the appellee; and it is contended that the engineer did not keep a lookout if he failed to see the appellee. Counsel cites to support his contention under this head, the case of *I. C. R. R.*

*Co.* v. *Dillon,* 111 Miss. 520, and *Allen* v. *Y. & M. V. R. R. Co.,* 71 So. 386. There is not the slightest analogy between the Dillon case and the case at bar. If the engineer was under duty to keep a lookout for pedestrians, or persons on the track, because some thirty-five or forty persons passed along that track every twenty-four hours, then it follows that there could be no such thing as a trespasser on a railroad track in Mississippi.

The case of *Allen* v. *Y. & M. V. R. R. Co., supra,* is equally dissimilar. In that case the plaintiff was injured because of the alleged negligent maintenance of a step which was part of a passageway leading into and across the railroad yards in the city of Vicksburg. The plaintiff was by this condition invited to use the steps and was injured in so doing by reason of a defective step which the railroad company negligently permitted to exist.

It is confidently submitted that nothing in the testimony will support the contention that the appellee was an invitee, or that the engineer was under any duty to keep a lookout for him and the cases relied upon do not support the appellee's contention.

Counsel next seeks to bring the case within the doctrine of the last clear chance and cites to support his contention the case of *A. & V. R. R.* v. *Kelly,* 126 Miss. 276 and *Jamison* v. *I. C. R. R. Co.,* 63 Miss. 33. In the Kelly case the deceased was walking along the track in front of the approaching train; the engineer saw him, but testified that the deceased was in the place of safety when first seen by him and when it was too late for him to stop his train, deceased walked onto the railroad embankment at a point which brought him within the sweep of the locomotive, and that the injury, therefore, resulted solely from the negligence of the deceased. The testimony for the plaintiff, however, in that case was to the effect that the deceased, a deaf and dumb boy, was at all times, after the train came in sight, on the track walking away from the train and in a position of peril,

and that the engineer made no effort to stop his train, but negligently and recklessly ran him down and killed him. In the present case the engineer and fireman both testified that they did not see the appellee.

In the Jamison case the testimony for the plaintiff showed that several children were walking along the track in plain view of the brakeman who was stationed as a lookout on the rear car of a backing train, and this lookout brakeman did nothing to avoid injuring the child who was in danger, but apparently oblivious of his own peril. It is apparent that the facts of the Jamison case, were controlled by a different principle of law. In the Jamison case the child was walking along the track with other children in plain view of the man who was shown to be looking in their direction, and it is inconceivable that he failed to see them. In the present case, the little boy, according to his testimony, was lying down between the ends of the cross ties, or on the end of the cross ties at a place where the engineer was under no duty to anticipate that a person would be and was not seen by him.

It would be stretching the last clear chance doctrine far beyond any point to which the courts have gone in order to hold the appellant liable in this case. To so hold it seems to us would be equal to saying that the engineer in charge of the train is bound, at his peril, to discover a trespasser on the track, and having so discovered him to do everything in his power to prevent injury.

Argued orally by *J. O. S. Sanders,* for appellant, and *W. C. Sweat,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

Etha Mann, by next friend, brought suit against the appellant for a personal injury inflicted by the appellant at Belmont, in Tishomingo county. The declaration

was in three counts. The first count charged that the train which injured the plaintiff was being operated at an unlawful and excessive and dangerous rate of speed, and that this caused the injury. The second count charged that the servants of the railroad company in charge of the train saw the plaintiff in a perilous position on the track, or that by the exercise of ordinary care they should or could have seen him, and that, notwithstanding, they willfully, recklessly, and in a grossly negligent manner operated said train, and thereby caused plaintiff's injury. The third count of the declaration charged that the servants of the railroad company in charge of the train were charged with the duty to keep a lookout for persons at the point where this injury occurred, and that they disregarded their duty on this particular occasion, and that the breach of this duty caused plaintiff's injury.

The defendant pleaded the general issue, and gave notice thereunder that the accident occurred outside of the restricted speed territory. There was a verdict for the plaintiff, from which the defendant appeals.

It appears from the plaintiff's evidence that he had gone that morning on the right of way for the purpose of grazing a cow, which was a customary practice at that point of the people living in that community; that he laid down on the cross-ties and went to sleep, and while asleep he was struck and knocked from the track by the train of the defendant. The injury occurred some two thousand two hundred feet north of the depot at Belmont, and south of a curve in the track above Belmont; the distance from the curve to where the boy was injured being one hundred fifty to two hundred feet. The inside of the curve was on the east side of the railroad, and the outside of the curve was on the west. The boy was on the east side, as he contends. The injury occurred to his knee, and was a permanent injury, according to the attending physician, and the boy suffered considerable paid. On his knee, just below the knee,

there was a stain from grease smut, caused by some part of the train.

The engineer and fireman both testified that they were on the lookout, and did not see the boy on the track. The fireman was on the inside of the curve, where the boy was injured, and testified that, if the boy had been there in the position he testified he was in, he, the fireman, could have seen him five hundred or more feet up the track, and that the train, at the speed at which it was going and the number of cars being carried, could have been stopped within one hundred feet. The engineer testified that on his side of the train he could not see an object on the opposite side at a less distance than one hundred fifty feet. Both the engineer and fireman testified that it would have been the duty of the fireman to have given notice immediately, had he seen the boy, and that with such notice they could have stopped the train within one hundred feet of where the accident occurred.

The defendant also offered another boy, who testified that he was present at the time of the injury, and that the injury was inflicted by the plaintiff's attempting to swing the train; that he attempted to swing the train, and missed his footing, and was thrown to the ground, and the witness became frightened and ran away. The plaintiff denied this statement of the defendant's witness as to his being present, and offered two other witnesses, who testified that such witness was not in Belmont on the day of the injury, but that he was visiting a relative living in another place on that day.

The appellant relies upon *Y. & M. V. R. R. Co.* v. *Huff*, 111 Miss. 486, 71 So. 757; *Y. & M. V. R. R. Co.* v. *Smith*, 111 Miss. 471, 71 So. 752; *Railway Co.* v. *Williams*, 69 Miss. 631, 12 So. 957. While the appellee relies on *A. & V. Ry. Co.* v. *Kelly*, 126 Miss. 276, 88 So. 707, and *Jamison* v. *I. C. R. R. Co.*, 63 Miss. 33. These cases are not in conflict, and it is for decision as to whether the *Kelly Case* and the *Jamison Case, supra,*

828    Illinois Cent. R. Co. *v.* Mann.    [Sup. Ct.

Opinion of the Court.    [137 Miss.

were controlling, or whether the cases of *Railroad* v. *Huff*, *Railroad* v. *Smith*, and *Railroad* v. *Williams* were controlling.

As above stated, it appears from the testimony that the engineer and the fireman were each keeping a lookout ahead. They intended to stop and take a side track for a passing train at the south end of the passing track at Belmont. The fireman was in a position to see the plaintiff, and testified that, if the plaintiff had been at the place he claimed he was, he would have seen him, and that he did not see him, although he was keeping a lookout; that he never saw him at all; that he did not know, until later, that the plaintiff had been injured.

The plaintiff testified that he was at a point which, if true, was in the line of vision of the fireman, and would necessarily have arrested his attention if the fireman's testimony were true, and this presented a question for the jury's decision, under the *Kelly Case* and the *Jamison Case, supra.* It may be that the railroad company at this point was under no duty to keep a lookout, and quite a different question would have presented itself, had the fireman testified that he did not keep a lookout.

The railroad company owes no duty to a trespasser until his presence is discovered, but after discovery it is then its duty to prevent the injury, if that can be done. Whether the engineer discovered the plaintiff's position of peril, under the facts in this record, is a question for the jury. This being true, it is unnecessary to decide whether the railroad company was under any duty to keep a lookout, or to ring the bell or blow the whistle, and consequently the judgment must be affirmed.

*Affirmed.*