YAZOO & M. V. R. Co. *v.* DAILY.

(Division A. April 7, 1930.)

[127 So. 576. No. 28545.]

4

H. D. Minor, Chas. N. Burch, and C. H. McKay, all of Memphis, Tenn., and Chapman, Moody & Johnson, of Indianola, for appellant.

Jas. W. Cassedy, Jr., of Brookhaven, and Franklin, Easterling & Rosenthal, of Jackson, for appellee.

6

Argued orally by **H. D. Minor**, for appellant, and by Jas. **W. Cassedy** and **Ed. Franklin**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Appellee, E. A. Daily, sued the appellant, the Yazoo & Mississippi Valley Railroad Co., claiming one hundred thousand dollars damages for personal injuries sustained by him on account of being run over by appellant's passenger train. There was a verdict for twenty-five thou-

sand dollars, a motion for a new trial, which was overruled, and a judgment was entered for appellee, Daily, for said sum, twenty-five thousand dollars, from which judgment the appellant, the railroad company, prosecutes this appeal here.

The original declaration charged that for years the railroad company had maintained a crossing over the railroad track which was used by the appellee, Daily, in going to and from his barn, and that this crossing was in constant and continuous use by the public; that the railroad company's line at this point was straight for some distance north and south, so that the operators of trains had an unobstructed view for many miles of this crossing. The original declaration also charged that the plaintiff, Daily, having gone to his barn, was undertaking to return, and "was walking in the pathway at or near the crossing at a time when there was no train in sight and that he stumbled and fell across said railroad track, and in falling, the plaintiff was knocked unconscious and remained unconscious for some length of time;" that his injury was due to the railroad company's willful, gross negligence in running over plaintiff and crushing both of his legs, cutting off entirely his right leg between the knee and ankle, and his left foot being badly crushed, necessitating the amputation of two toes, and that he was otherwise seriously and permanently injured.

To this the defendant railroad company filed a general issue plea of not guilty, together with a notice that on the trial the defendant railroad company would offer evidence that the plaintiff, Daily, wholly in disregard of his safety, and without negligence on the part of the railroad company, went on the track without noticing the approaching train, paying no attention to it, and, in trying to get off, fell and was run over by the train, which could not have been stopped after the engineer had seen Daily on the track, and that Daily's accident was due to his own negligence, and not to any negligence on the part of the railroad company.

On September 18, 1929, just before the trial of this case, Daily asked leave to file an amended declaration, which was granted him, although the jury had been impaneled and sworn. The amended declaration charged that the maintenance of the crossing by the railroad company was an invitation to the public and to Daily to use said crossing, and that the railroad company was under the duty, at said crossing, to keep a lookout for any person, and to exercise a reasonable care not to injure such person. The declaration was further amended to show that Daily was injured *at the crossing*, the original declaration having shown that the injury occurred not on, *but near*, the crossing, thus changing the words from "near the crossing" to "at the crossing." The same pleas were reinterposed by the railroad company to the amended declaration. This amended declaration was objected to by the railroad company, and a continuance was asked, which motion was overruled.

After the evidence was heard and both parties had rested, the court allowed, over the objection of the railroad company, the plaintiff, Daily, to add the following second count to his amended declaration: "For a second count, the plaintiff would show that the plaintiff and the defendant, being situated as set forth in the first count of his amended declaration, and in addition thereto, the plaintiff charges that as a matter of fact at the time he was on the defendant's track in a position of peril and the defendant's servants in charge of said train saw and knew he was on said track in a position of peril at a time when, by the exercise of reasonable care, they could have avoided injuring him, and that said servants of the defendant in charge of said train wrongfully and negligently ran said train over the plaintiff and caused him to be injured and hurt and damaged in the manner set forth in the first count of the amended declaration, and for such damages in the sum of one hundred thousand dollars he brings this suit and demands judgment."

Evidence was offered to the effect that the crossing had been there from sixteen to twenty-five years; that this crossing had been built by the railroad company; that it had planks laid alongside the rails; and that approaches were built to the east and west, making it easy for pedestrians and people traveling in vehicles; Daily owned land on both sides of the railroad and his barn was on the west side; that, as stated, he had gone to his barn, at the time of the injury, and was undertaking to return, seeing no train; that he stumbled and fell and struck his head and was rendered unconscious, and that the next time he realized anything, he saw a train approaching; that he tried to get away by rolling off the track, and got most of his body off, but the train ran over his leg and foot, and that he was knocked forward by the impact of the train; that, as stated, he had one leg and two toes on the other foot amputated, and that, after being discharged, he had to return to the hospital for further treatment; that he was a farmer, operating a plantation, and, on examination, he was finally forced to admit that he had been losing money for two years previous to his injury, and that, after his injury, he was compelled to deed the plantation as directed by the ba which had a mortgage thereon, in order to keep said bank from foreclosing said mortgage. The witness Daily was confused, on cross-examination, as to his gross and net earnings, and finally estimated his net earnings at three thousand dollars to four thousand dollars a year, and then, on further examination, indicated that these figures were not at all accurate.

The physicians testified that Daily is permanently injured, and will always walk with difficulty even with a cork leg, because of the loss of his big toe. At the time of the trial, it was shown that the plaintiff, Daily, had great difficulty in getting about, and he said he could no longer manage a plantation. Prior to his injury, he was in good health.

There were four witnesses whose evidence tended to corroborate the plaintiff's theory that he was injured at and on the crossing. One truck driver said that he saw Daily fall on the track, but proceeded south and met the passenger train more than four thousand feet from the crossing as it was going into the town of Blaine.

Blankership, the engineer on the passenger train which struck Daily, an engineer of thirty-four years' experience, testified that the machinery, appliances, and equipment of the train were all in first-class condition; the brakes were working all right; that he had attended to all the duties such as watching the water in the boiler, the lubricator, and the pump and appliances, although he did look out on occasions, and did on this occasion, having stopped at Blaine about a mile below, and, seeing nothing, was running at this time at from thirty-five to forty miles an hour; that he saw Daily when he was about one hundred fifty to two hundred feet from him; that he was sprawled headforemost on the west side of the track as though he was falling on the track. The engineer immediately applied the brakes, sounded the alarm whistle, and did everything he could do to stop the train, but could not stop it within less than five hundred feet, though it is shown that it was actually stopped at less than five hundred feet. It was a passenger train, with three cars, engine, and tender. The engineer further testified that Daily was on the railroad about sixty feet north of the crossing, and that his body was not thrown therefrom when he was struck, nor was Daily dragged by the train at all. The fireman testified practically the same as did the engineer, except that he did not see Daily until the brakes were applied and the whistle blown.

One witness testified that she was sitting on her porch, and that Daily was walking north of the crossing when the train sounded the whistle and then the distress whistle; that the engine was further from Daily than from where she was to the jail, which was pointed out. It was afterwards shown that the jail was from seventy-

five to one hundred yards from where the witness sat. One witness who said he saw Daily on the crossing was contradicted by another witness who said the first witness had not been in his house.

The railroad company offered several witnesses who testified that Daily had made contradictory statements as to the details of his injury, the effect of which was that he saw the train and thought he could make it across the track, but stumbled and could not get off before the train struck him. The railroad company also offered two proofs of loss made to different insurance companies, wherein the plaintiff, Daily, did not state anything about being rendered unconscious by his fall. One of the statements was written by his wife, who said that she did not write it as Daily detailed the circumstances to her because she did not think it was necessary.

From this statement of the facts, it will be seen that there was a square conflict of testimony, and that the witness Daily's credibility was impeached by his extra-judicial statements.

It was assigned for error the filing of the amended declaration after the jury had been impaneled and the refusal of a continuance.

1. It is sufficient to say that the amendments to the declaration only limited the plaintiff to a more narrow scope in the proof as to where the injury occurred, and no reversible error could be predicated thereon; neither could the railroad company claim to be surprised by the allegations, as all of its pleas and evidence were directed to the contention that the accident did not occur on the crossing, but occurred north thereof. The whole completed trial shows that no injury accrued to the railroad company by these amendments.

2. It is contended that the court erred in permitting the second count to the amended declaration to be filed after the evidence was concluded. The amendments only purported to be a setting up of another count conform-

ing to the evidence, and no error could be predicated thereon.

3. It is insisted that we should reverse the case on the facts because Daily was impeached by the statements out of court which he himself made as to how his injury occurred. We think this is not an unusual case of a conflict in the facts, which is especially within the province of the jury, and, however we may view the facts, we do not think we would be warranted in interfering with the verdict of the jury on the question of liability. The case cannot be brought within the rule announced in M. & O. R. R. Co. v. Bennett, 127 Miss. 413, 90 So. 113. The evidence of the plaintiff was not based on the signal statute, but tended to show common-law liability of the railroad company and its duty when approaching a crossing maintained by it, and to its knowledge used by a number of people, and this case is controlled by the well-settled principles announced in the cases of Allen v. Y. & M. V. R. R. Co., 111 Miss. 267, 71 So. 386, and I. C. R. R. Co. v. Dillon, 111 Miss. 520, 71 So. 809. If Daily was injured on the crossing, he was an invited licensee of the railroad company, and it owed him the duty not to negligently injure him. On the facts of this case, the jury might well have found either way on this question.

4. It is insisted by the railroad company that the court erred in giving an instruction for the plaintiff to the effect that, if the plaintiff, Daily, was upon the defendant's railroad track in a place of danger, and the jury believed from a preponderance of the evidence that the engineer in charge of the train saw and knew that Daily was on the track in a place of peril, and, after seeing and knowing that Daily was upon the track in a place of danger, and by reasonable care could have avoided striking him, and negligently failed so to do, then the jury should have found for the plaintiff, Daily, even though they might also have believed that said plaintiff was not injured when he was on the crossing.

There is evidence in the record to support this instruction to the effect that the train could have been stopped within one hundred fifty to one hundred sixty feet. There is also evidence in the record which tends to show that the engineer saw Daily sprawled upon the track when he was a distance of from two hundred twenty-five to three hundred feet away. This theory of the case and the conflict of testimony were submitted to the jury under the rule of Jamison v. I. C. R. R. Co., 63 Miss. 33; A. & V. R. Co. v. Kelly, 126 Miss. 276, 88 So. 707; I. C. R. R. Co. v. Mann, 137 Miss. 819, 102 So. 853.; Yazoo & M. V. R. Co. v. Lee, 148 Miss. 809, 114 So. 866; and Edw. Hines Yellow Pine Trustees et al. v. Holley, 142 Miss. 241, 106 So. 822.

5. We do not think there was any error in granting or refusing any of the instructions complained of. The motion for a new trial did not contain the affidavits of the two witnesses whom the railroad company claimed had repudiated their statements on the trial as to having seen Daily on the crossing. The record shows that these two witnesses were present in court when the motion for a new trial was requested, and had been interviewed by counsel for the appellant before his motion was made. They were not offered as witnesses, and the unsworn hearsay statements were properly excluded. The motion for a new trial was properly overruled.

6. It is insisted that, in the light of all the circumstances, the verdict in this case is grossly excessive. It is shown in the record that the appellee, Daily, was fifty-nine years of age, that he was a farmer, and that his earnings, to say the least, were rendered quite uncertain by the want of accurate knowledge on the part of appellee as to his earning capacity and the contradictions brought about by his answers on cross-examination. In view of his age, life expectancy, and the fact that, while he has lost one leg and one toe, yet we do not think he is disabled from pursuing, to some extent, his business

of managing a plantation. There are many men with one leg or arm who are pursuing gainful occupations.

We have reached the conclusion that we should not allow this judgment to stand for the amount rendered, but think fifteen thousand dollars is a fair amount to be awarded Daily. If the appellee, Daily, will enter a remittitur for the sum of ten thousand dollars, the judgment will be affirmed, but, in event the appellee declines to enter this remittitur, the case will be reversed and remanded for another trial on the amount of damages.

Affirmed, with remittitur.