## SAM. LEPNICK *v.* E. F. GADDIS.

NEGLIGENCE. *Dangerous premises. Excavation.*

> Where the owner of a lot, upon a part of which is a store covering a cistern, invites the public to use the vacant part of the lot and paths across it as a highway, and the store burns, leaving the cistern open and in dangerous proximity to the paths, which continue to be used by the public, such owner, by removing all guards and protection from the cistern, becomes liable to one who, while exercising reasonable care, strays in the dark from the path and falls in the cistern, and is injured.

FROM the circuit court of Madison county.

HON. J. B. CHRISMAN, Judge.

The opinion states the facts.

*H. B. Greaves,* for appellant.

The facts set up in the declaration clearly show negligence on the part of defendant, and, as they do not show contributory negligence, the demurrer should have been overruled. Without reference to the authorities sustaining our position, common reason and justice require the defendant, under the facts in this case, to be held liable. Conceding his right to do with his own as he pleases, he must exercise this right with due regard to the rights of others. He should not be permitted to wantonly or carelessly leave unprotected and unadvertised a dangerous excavation in close proximity to a thoroughfare in a thrifty and growing town. The evidence shows that the cistern was a

dangerous pitfall, a menace to the lives, not only of strangers, but of the citizens of the community. The declaration is fully supported by the authorities. See 50 Barb. (N. Y.), 358; 16 Ind., 315; 68 N. Y., 283; 30 Conn., 535; Whittaker's Smith on Neg., 65, 66; 9 Penn., 472; 95 Ind., 361. The facts show that defendant invited the public to use the lot and paths thereon. As to what amounts to an invitation, see *Railway Co.* v. *Hirsch*, 69 Miss., 126. Appellee was bound not only to leave the cistern safe, but to keep it in a safe condition. *Vicksburg* v. *McLean*, 67 Miss., 4.

*W. J. Croom*, for appellee.

Defendant's storehouse was burned in 1890, and he then ceased to do business on the lot, which became vacant, and continued so until 1893, when plaintiff fell into the cistern and was injured. Under the facts, there was no invitation to the public to use the premises as a highway. One is not invited into danger when his entrance into the dangerous premises is simply not opposed, or not prevented. Thus, one whose unin-closed grounds people cross, without objection, is not liable to a person who falls into an unguarded cistern thereon. *Hargreaves* v. *Deacon*, 25 Mich., 1; Cooley on Torts, 606. It is only when, by his active conduct at the time, one invites or in-duces another to come upon his premises, that there is an in-vitation. Bigelow's Leading Cases on Tort, 702.

Plaintiff was a bare licensee, or volunteer, and as such has no right of action, unless the cistern was so close to the public highway as to make it a public nuisance. At the nearest point the cistern was twenty-three feet from the highway, and it could not be considered a public nuisance. Bigelow's Leading Cases, 698–700. There was no danger of one, properly using the highway, falling into the cistern. Before reaching it, he would have to become a trespasser. See Woods on Nuisances, § 291; 83 Ill., 204; 9 Am. & Eng. Enc. L., 382; 100 N. Y., 637; 66 Ga., 195; 70 Miss., 695.

Argued orally by *F. B. Pratt*, for appellant, and *W. J. Croom*, for appellee.

WHITFIELD, J., delivered the opinion of the court.

The plaintiff rests the cause of action, in the first count, upon this state of case: That defendant had long owned a lot in Flora bounded by two of the main thoroughfares; that the lot was vacant, except for his storehouse, which covered a cistern; that the storehouse had long been used as a place of business; that the entire public used, at defendant's invitation, knowledge, and consent, this vacant lot as a thoroughfare and common in passing from street to street, and also so used two paths over said lot within three and eleven feet, respectively, of the cistern; that the cistern was within twenty-three feet of the pavement; that, in the winter of 1890, the store was burned, but for some time thereafter defendant kept it guarded and advertised so as not to be dangerous to passers by and himself, and continued to use it as a cistern for some time, still guarding and advertising it; that it finally caved in, and he abandoned its use and removed the guards and advertisements which would warn and protect those using the highway, or unconsciously straying therefrom, from danger, but wantonly and carelessly left said cistern as a "menace to the lives and safety of man and beast, within such close proximity to the highway that, under ordinary circumstances, he knew it was dangerous to those using the highway," etc.; "that, during the winter of 1893, appellant, a stranger, while carefully using the highway, the night being dark, rainy and cloudy, and there being nothing to show where the highway ended and the vacant lot begun, strayed therefrom, and, whilst so bewildered and lost, fell into said cistern and was injured."

The second count varies the cause of action by adding that the defendant, while using the store and the vacant lot, constructed, within three or four feet of said cistern, then protected, a hitching post for horses and mules, and invited and induced

the public to come upon his said lot, and not to follow the side-walks, but to come by paths and a wagon road being within three and eleven feet, respectively, of said cistern, and fasten their horses to said hitching post, 'and that, in consequence of such invitation and inducement thus held out by defendant, "a part of the public sidewalks fell into disuse," which disuse of the sidewalks and use of the paths, being a source of profit to defendant, he had encouraged and invited, and that the paths had been so constantly used for years as a common and constant passway by everybody, at defendant's invitation and request, etc.; and that plaintiff, "while passing along the side-walk and the path leading across defendant's lot, thinking the same was the highway, being the way apparently commonly used," etc., fell into the cistern and was injured, "complainant being a comparative stranger, and seeing no other used sidewalk."

The third count proceeds on the ground that the cistern was a public nuisance. A demurrer was interposed on the grounds that the declaration showed no negligence on defendant's part, but contributory negligence on plaintiff's part. The demurrer was sustained and the suit dismissed, and this action of the court is the error assigned.

In *Beck* v. *Carter*, 68 N. Y., 283, Carter owned the United States Hotel. There was a vacant space of forty or fifty feet between the hotel and Buell street, and "this vacant space was used as a public place, and as part of the street." The hotel was burned in 1868, and rebuilt in 1872, and, in the interim, the same use was continued. The court. says: "It is manifest that if the plaintiff had kept within the original bounds of the alley, he could not have fallen into the excavation. It was because he strayed and deviated therefrom, and went upon the defendant's lot, that he was injured. But it cannot be held, upon the evidence, that the plaintiff was a trespasser in going there. There was, it is true, no public easement or right of way over the defendant's lot. It was his private property, and

he had the right to its exclusive possession. He could have in-closed it, and excluded the plaintiff and all other persons from going upon and passing over it. But . . the public had been permitted to pass over the vacant part of the lot without objection. . . This part of defendant's lot was traversed by foot passengers, and was used as a part of the street. . . The public used it, and the defendant, by his silence, assented to its use. This use was not occasional or infrequent. The same use was permitted and continued after 1868, when the hotel was burned, until a new building was erected. The public still continued to use the lot. There was no revocation of the license or permission." And the court proceeds, after laying down the general rule and reviewing the cases of *Hardcastle* v. *Dun & Co.*, 4 H. & N., 67, and *Binks* v. *Dun & Co.*, 113 Eng. C. L., 242—both relied on by appellee here—and distinguish-ing them, says: "In this case we think the circumstances im-posed a duty on the defendant to protect the excavation. . . It was not the case of a bare permission by the owner to cross his land adjoining a public street. The land had, by use long continued, been made, for the time being, a public place and part of the highway. It was very probable that injury would occur if the area was left uncovered. It is quite conceivable that, so long as the hotel building stood, it was an advantage to the owner that the unoccupied part of the lot should be open to the public. We think the defendant could not, under the cir-cumstances, make a dangerous excavation [and leaving the cis-tern here unprotected after the fire is equivalent, in principle, to making an excavation], and leave it unprotected, without re-sponsibility to those accustomed to use the lot as part of the highway, and who, while using due care, were injured by fall-ing into it." It will be noted that the lot, in that case, lay vacant four years, and that circumstance was held not to vary defendant's liability in the case made by the facts.

In the case of *City of Norwich* v. *Breed*, 30 Conn., 535, the court reviews and distinguishes the English cases referred to,

and, on the point of mere distance from the highway, says: "Distance is one, and but one, of the elements which enter into the calculation. `. . Whether the excavation could, with a due regard to the rights of passengers on the streets, be left unguarded, or could not, depended upon the question whether, being unguarded, it endangered the travel or not. If it did not, no matter how near it was to the line of way. If it did, no matter how far it was removed." This proposition is put thus in the very accurate note to *Gibson* v. *Delaware*, 36 Am. St. Rep., 802: "It seems to be very generally agreed that the proximate cause has no necessary connection with time or distance. It means closeness of causal relation, not nearness in time or distance;" citing many authorities. In *Graves* v. *Thomas*, 95 Ind., 361, the defendant had a store on a lot, and another vacant lot bordered his on the north. "There were two paths, one being along the sidewalk proper, and the other diverging from it, and returning to it, passing over said vacant lot on the north of defendant's lot, and also over the defendant's lot, the latter path being upon higher ground than the path along the sidewalk proper." The plaintiff, on a dark night, without a lantern, took this path, and fell into an excavation on defendant's lot. This path had been used by the public for eight years, in wet weather, instead of the sidewalk. The court put the liability of defendant upon the ground that the "probability that such an accident might happen from thus leaving the pit exposed was so strong as to make it the duty of the owner of the lot, as a member of the community, to guard the community from the danger to which the pit exposed its members," and added, "in the case at bar, we think that the fact that for a long period the public using the sidewalk had been permitted to use the place where the plaintiff fell, as a part of the sidewalk, made it the duty of the defendant to guard the excavation made at that place, and that the jury were authorized to find from the evidence that the plaintiff did not, by her own negligence, contribute to her injury." Reaffirmed in *Railroad Co.*

v. *Griffin*, 100 Ind., 221. In Mr. Beach's recent work on
Contributory Negligence (page 335, note 2), it is said, citing
many authorities: "Where one.allows a portion of his premises
adjoining the street to be used by the public as part of the high-
way, and makes an excavation near by, he will be liable, if he
does not take reasonable care in protecting passers' by from fall-
ing in." This principle is carried very far in *Campbell* v. *Boyd*,
88 N. C., 129. In *Sanders* v. *Reister*, 1 Dak., 151, on the
question of trespass, it is said: "Stress is laid on the fact that
the appellant had a legal right to dig a cellar on his own prem-
ises. Certainly he had. So has a man a right to keep a dog,
and make a sunk flat within the inclosure of his unfinished
building; but he must take care of the one, if ferocious, and
guard the other, if dangerous, so that harm may not come to
others thereby. I apprehend the particular character of the
instruments, as causes of injury, is unimportant, in contempla-
tion of law, except so far as it may affect the question of the
degree of care or negligence with which they are used, kept or
constructed. It would seem to me to be a strange rule of law
that would permit the owner to sink dangerous excavations on
his uninclosed premises, near to a public highway, in a densely.
populated city, leave it without guard or protection,' and hold
him not liable in case a person accidentally or unintentionally
steps across the line, falls in, and is killed, simply on the ground
that the party injured was guilty of a technical trespass, and
yet make the proprietor respond in damages who places spring
guns in his inclosed vineyard, whereby a wilful trespasser is
shot and wounded." In the well considered case of *Harriman*
v. *Railroad Co.*, 45 Ohio, 11, cited in *Schmidt* v. *Distilling
Co.*, 59 Am. Rep., 25, in discussing "invitation," the court
says: "In the late case of *Heaven* v. *Pender*, 11 Q. B. Div.,
503, it is said that a more accurate and satisfactory ground of
recovery, embracing all cases of implied invitation, is to be
found in the proposition that whenever one person is, by cir-
cumstances, placed in such a position with regard to another

that every one of ordinary prudence would recognize that, if he did not use ordinary care and skill in his own conduct with regard to these circumstances, he might cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger." However this may be, the phrase, "implied invitation," in its real value and significance, as derived from its application in the adjudged cases, imports knowledge by the defendant of the probable use by the plaintiff of the defendant's property so situated and conditioned as to be open to, and likely to be subjected to, such use. This is the principle of the case of *Mackey* v. *City of Vicksburg*, 64 Miss., 777, cited with distinct approval in (Mo. Sup.) 59 Am. Rep., 25, and in Cooley on Torts, 721, note 1. See, also, *Hydraulic Works Co.* v. *Orr*, 83 Pa. St., 332.

These authorities clearly establish the principle that if the defendant here, while using his lot and store, invited and induced the public to use his lot and the two paths as part of the highway, having his cistern then guarded, and after the fire left it open, still, however, for some time, guarding it, but afterwards removed the guards and advertisements, so as to leave the cistern dangerous to those who, exercising ordinary care, used either the highway or the paths as parts or part of the lot allowed by him to be used as part of the highway by the public, such use of such paths as part of the highway, having been uninterruptedly continued, he is liable, unless the plaintiff's own conduct was the proximate cause of the injury; and to this we limit our decision in this case. It need only be said further that, in this view, plaintiff, in no proper sense, can be deemed a trespasser, without reference to whether the other facts alleged, that he "strayed, a stranger, bewildered and lost, from the highway, thinking the path he took was the highway, it being apparently the commonly used way, and there being nothing to show where the highway ended and the vacant lot begun." Whether these facts would take him out of the category of trespasser, on the reasoning of the Dakota

case, we do not now say. Clearly, the facts above set out as the ground of our decision would. We shall not here add to the innumerable efforts at definition of "proximate and remote cause"—a task well characterized by an eminent English judge as "something like having to draw a line between night and day"—but content ourselves with saying that we think the first two counts of this declaration stated good causes of action; wherefore,

*The judgment is reversed, demurrer overruled and the cause remanded.*