MARLON INVESTMENT COMPANY *v.* CONNER

No. 42531          February 4, 1963          149 So. 2d 312

344

*Welch, Gibbes & Graves,* Laurel, for appellant.

*Howard L. Patterson, Jr., Gilbert F. Heinbaugh,* Hattiesburg, for appellee.

ETHRIDGE, J.

This case involves the tort liability of an owner of land containing an office building near a public sidewalk, to a person who parked her car on a parking apron in front, as a convenience to visiting a business in an adjacent building, and who was injured when by mistake she walked down a dark, abandoned stairway in front of the owner's building.

**(Hn 1)** Mrs. Homer L. Conner, appellee, brought this action in the Circuit Court of Forrest County against

appellant, Marlon Investment Company (called Marlon), and W. W. Gammel, doing business as Gammel Music Company. The case was submitted to a jury on plaintiff's evidence alone. It returned a verdict for Gammel, and a verdict of $5,000 for Mrs. Conner against Marlon. There is no issue as to the amount of damages. Marlon contends only that it was entitled to a peremptory instruction. In view of the jury's verdict, the facts and all reasonable inferences from them in favor of plaintiff must be taken as true.

## I.

Plaintiff and her husband had lived in Hattiesburg for a short time before her fall on August 14, 1961. They operated a drive-in restaurant, and Gammel furnished the coin-operated machines. They had been doing business with Gammel for sometime, but Mrs. Conner had never been to his place of business in downtown Hattiesburg.

Marlon and Gammel own adjoining properties across the street from the city hall. Facing the two buildings from the street, Gammel's building, on the right, is finished in red brick, and Marlon's building, on the left, is brick painted a light color. Gammel leased the street level portion of his building to a third party, and carried on his business downstairs. It has a main entrance on the street level near the sidewalk, and on the left side is a covered but unenclosed alcove leading to a doorway, on which is printed "Gammel Music Company". This doorway opens upon stairs going down to the basement level where Gammel has his business.

Although Gammel's building is flush with the sidewalk, Marlon's building is set back from the street fifteen to twenty feet. The area in front of it is surfaced with concrete and contains at least three signs indicating "Parking Reserved" for named tenants. On the right front of the Marlon building are steep concrete stairs,

approximately eight feet wide, going down to the basement. The stairs were open, uncovered, and without light. There was an iron railing on either side of them, and handrails going down both walls of the stairs and in their center. The building was used as a bus station during World War II, and these stairs were then used by passengers coming from inside the station on the ground level, who walked down and under the building into the parking area of the bus station in the rear. The depot was changed to another location after the war, and at that time Marlon ''abandoned the use of those stairways.'' The door at the bottom of the stairs was boarded and locked.

On the night in question, Mrs. Conner ran out of change to be used in Gammel's coin-operated machines. Gammel was not able to deliver any, so she drove her car to Gammel's place. Someone advised her it was across the street from the city hall. It was 9:30 P.M. and drizzling rain. Mrs. Conner parked her car on the concrete apron in front of Marlon's building. She got out of it, on the apron, and saw the lighted neon sign on the side of Gammel's building, stating ''Gammel Music Co.'' Under that sign was an arrow apparently over two feet long, pointing downward, stating ''Downstairs.'' This arrow was over Marlon's abandoned stairwell, and in that location was manifestly misleading to a stranger at night and under the circumstances. It also pointed toward the recessed door opening on the steps in Gammel's building, leading down to his basement office. Since the Gammel sign pointing ''downstairs'' was directly over Marlon's abandoned stairs, and it was dark and she did not see the door to Gammel's stairway, Mrs. Conner proceeded to walk down Marlon's stairs. After she had gone three or four steps, she was able dimly to see, by reflection from the colored neon sign next door, that the bottom of the stairs was closed. She then started back up the stairs, and, although she saw

the rubbish, she slipped on it and a tin can on the steps, causing her to fall all the way down.

Mrs. Conner said that, when she got out of her car, and she saw the Gammel "downstairs" sign with the arrow, Marlon's were the only visible stairs, and she thought they were the proper ones. She parked on the apron to the left of a car owned by H. L. Patterson, and walked in front of it to go down the steps. She saw the parking markers reserved during business hours, but no business was being done that night; she planned to be there only a few minutes.

There was no curb or other obstacle to prevent a person from driving on the parking apron in front of the Marlon building. It was paved with the same type of concrete as the public sidewalk, and had been paved in that manner for many years. In the daytime Marlon's tenants used the parking area, but at night the public parked there frequently. Taxis often stopped there for passengers, both day and night. At the time of Mrs. Conner's fall, there was another car in addition to Patterson's parked to his right on the apron. The apron served as a parking area and entrance to and from the Marlon building, and in general was used by the public. There was a walkway which went around the building to the back, where others parked.

## II.

(Hn 2) Mrs. Conner was not a trespasser on Marlon's property. A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise. 2 A.L.I., Restatement of Torts, Sec. 329; Prosser, The Law of Torts (1955), Sec. 76; 2 Harper & James, The Law of Torts (1956), Secs. 27.1 - 27.7. Neither, under the circumstances, can she be classified as an invitee. 2 Harper & James, Sec. 27.12. (Hn 3) However, the jury was warranted in finding she was

a gratuitous licensee. **(Hn 4)** A licensee is a person who is privileged to enter upon land by virtue of the possessor's consent or permission. **(Hn 5)** Permission is conduct justifying others in believing the possessor is willing that they shall enter if they desire to do so. This consent may be expressed by acts other than words. The decisive factor is the interpretation which a reasonable man would put upon the possessor's acts, in the light of all the surrounding circumstances, and the custom prevailing in the community. 2 A.L.I., Rest. of Torts, Sec. 330.

This permission may, of course, be tacit, and may be manifested by the defendant's conduct, or by the condition of the land itself. It is often a question for the jury. Prosser, Torts, Sec. 77. In the instant case, the jury could consider the fact that Marlon's parking apron was immediately adjacent to the public sidewalk, without any barriers or distinguishing features in the nature of the pavement; that many members of the public used the apron for parking at nighttime in particular, and for the purpose of walking around to the rear of Marlon's building; that taxis frequently used it; and that at the time Mrs. Conner drove there, there were already two other cars parked on the apron.

Marlon's instruction No. 5 submitted to the jury the issue of whether plaintiff was a trespasser. It found against defendant on this question. Plaintiff's instruction No. 5 submitted the question of whether Marlon had by its conduct permitted the public to use the premises in the belief it was a public way, and whether the users had an ''implied invitation'' for that purpose, which phrase ''imports knowledge by the defendant of the probable use of his property in such a manner.'' The jury manifestly found the existence of such an implied invitation, permission, or consent classifying Mrs. Conner at least as a licensee.

This conclusion is consistent with analogous Mississippi cases. Lepnick v. Gaddis, 72 Miss. 200, 16 So. 213 (1894); Allen v. Y. & M. V. Railroad Co., 111 Miss. 267, 71 So. 386 (1916); Standard Oil Co. v. Decell, 175 Miss. 251, 166 So. 379 (1936); see Prosser, Sec. 77; Harper & James, Sec. 27.8; 38 Am. Jur., Negligence, Sec. 104; 65 C.J.S., Negligence, Sec. 32.

## III.

A common statement of the rule is that no duty exists toward a licensee except to refrain from willfully or wantonly injuring him, and not to set traps for him by exposing him to hidden perils. Dry v. Ford, 238 Miss. 98, 117 So. 2d 456 (1960); Wright v. Caffey, (Miss.), 123 So. 2d 841 (1960). A more complete and accurate statement of the current law on this subject is expressed by Prosser, Torts, Sec. 77:

"A licensee is a person who is privileged to enter upon the land by virtue of the possessor's consent. The possessor is under no obligation to exercise care to make the premises safe for his reception, and is under no duty toward him, except:

a. To use reasonable care to discover him and avoid injury to him in carrying on activities upon the land.

b. To use reasonable care to warn him of any concealed dangerous conditions or activities which are known to the possessor, or of any change in the condition of the premises which may be dangerous to him, and which he may reasonably be expected not to discover. Once the licensee in fact discovers the danger, he may not later complain of it."

2. A.L.I., Restatement of Torts, Sec. 342, summarizes the rule in this way:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or· artificial condition thereon if, but only if, he

(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

(b) invites or permits them to enter or remain upon the land, without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to warn them of the condition and the risk involved therein.''

The likelihood of presence, with its consequent probability of harm, is becoming increasingly recognized as the essential basis of liability. 2 Harper & James, Sec. 27.8. The evidence warranted the jury in concluding that Marlon knew of the condition of the unguarded, abandoned stairway. Photographs of it reflect the growth of grass in the apertures of the concrete and considerable rubbish, which would warrant an inference that it had been there some time. The Gammel sign, with the arrow pointing down Marlon's unused stairway, was necessarily connected with the unreasonable risk to others from the unguarded opening to the abandoned stairs. Marlon left it that way.

This case falls in the general category of the many instances recognizing a licensor's liability for hidden perils on the premises. This rule is summarized in 65 C.J.S., Negligence, Sec. 38, as follows:

"Liability for injury to a licensee may be predicated on negligence in leaving something in the nature of a trap or pitfall at a place where his presence might have been anticipated, without a warning thereof, although there was no intention to cause any injury, as the owner or occupant owes a duty to the licensee not to set or maintain traps or pitfalls on the premises for him. A 'trap', within the meaning of this rule, is a danger

which a person who does not know the premises could not avoid by reasonable care and skill.''

In short, the owner of the premises owes a duty not knowingly or willfully to let the licensee run into or expose him to a hidden danger or peril, but should take whatever steps are reasonable, under the circumstances, to protect the licensee from such peril, and give a reasonable warning. Failure to do so may result in his liability. 38 Am. Jur., Negligence, Secs. 105, 106.

Some of the older cases considered a condition a trap ''only if it was highly dangerous and very much concealed. . . . . In the case of licensees, however, most courts today extend the occupier's duty to any danger that the licensee cannot reasonably be expected to observe and avoid. Thus, for example, licensees have recovered for harm caused by an unexpected step down in the dark, a pile of building material left on a private road, and an unguarded excavation in or near a path.'' 2 Harper & James, p. 1473.

(Hn 6) The duty is not to maintain the land in safe condition, but to disclose to the licensee any concealed, dangerous conditions on the premises of which the owner has knowledge, and to exercise reasonable care to see that the licensee is aware of the danger. Prosser, Sec. 77.

The annotation in 55 A.L.R. 2d 525 (1957), summarizes the rule as follows:

''While in a number of cases general language may be found which seems to restrict a licensor's duty to a licensee to that of refraining from wilful or wanton misconduct, or, at most, active negligence, the cases which have explicitly considered the question have frequently recognized that a licensor-landowner may be under an obligation of exercising reasonable care to warn licensees of hidden dangers known to the licensor.''

The Mississippi cases have applied these principles. In Lepnick v. Gaddis, 72 Miss. 200, 16 So. 213 (1894),

the owner of a lot, upon a part of which was a store covering a cistern, allowed the public to use the vacant part of the lot and paths across it as a highway and thoroughfare. The store burned, leaving the cistern open and in dangerous proximity to the paths used by the public. The owner removed any guards and protection from the cistern. On a dark and rainy night, the plaintiff, a stranger, while carefully using this pathway, fell into the cistern and was injured. The court found an implied permission or consent, that plaintiff was a licensee, not a trespasser, and the owner was liable, on the pleadings. The court referred to the probability that such an accident might happen from leaving the cistern exposed, and said:

". . . . However this may be, the phrase, 'implied invitation,' in its real value and significance, as derived from its application in the adjudged cases, imports knowledge by the defendant of the probable use by the plaintiff of the defendant's property so situated and conditioned as to be open to, and likely to be subjected to, such use."

Allen v. Yazoo & M. V. Railroad Co., 111 Miss. 267, 71 So. 386 (1916), involved a pathway and steps across a railroad company's property. The general permissive use by the public of this pathway, and the construction by the railroad of the steps constituted an implied invitation to the public to use this way. Plaintiff fell on one of the steps which was out of place. Adopting the quoted statement in *Lepnick,* it was held there was an implied invitation to the public to continue use of the path, and the railroad was liable for injuries occasioned by the unsafe condition of the premises, if that condition was a result of the defendant's failure to use ordinary care to prevent it.

In Standard Oil Co. v. Decell, 175 Miss. 251, 166 So. 379 (1935), the company leased a filling station to Harrison. Both lessor and lessee, and the municipality, were

held liable in damages for a pedestrian falling at night into an unlighted and uncovered grease pit near a way used commonly by pedestrians across the property. Citing the Restatement of Torts, Sec. 368, it was said that a possessor of land, who maintains an artificial condition so near an existing public way, that he should realize it involves an "unreasonable risk to others accidentally brought in contact therewith while traveling upon the highway," is subject to liability for bodily harm thereby caused to them. The lessor was liable if he knew or should have known of the condition. The duty extended to persons, although not patrons of the station, who used the premises as a passageway.

Felter v. The Texas Co., 227 Miss. 760, 86 So. 2d 872 (1956), declined to extend *Decell* to hold a city liable in an instance where the walkway was located on private property and not in proximity to the street, but did not consider the liability of the operator of the service station. Cf. Kelley v. Sportsman's Speedway, Inc., 224 Miss. 632, 80 So. 2d 785 (1955) (where plaintiff's intestate was a trespasser).

Yazoo & M.V. Railroad Co. v. Daily, 157 Miss. 3, 13, 127 So. 575 (1930), followed *Allen,* and held that, if plaintiff was injured on the crossing, "he was an invited licensee of the railroad company, and it owed him the duty not to negligently injure him." See also Annos. 14 A.L.R. 1397, 1411-1418 (1921), 159 A.L.R. 136 (1945), 174 A.L.R. 471 (1948); Strand Enterprises, Inc. v. Turner, 223 Miss. 588, 78 So. 2d 769 (1955); Nowell v. Harris, 219 Miss. 363, 68 So. 2d 464 (1953); James, Liability of Occupiers of Land: Duties Owed to Licensees and Invitees, 63 Yale L.J. 605 (1954); Prosser, Business Visitors and Invitees, 26 Minn. L.R. 573 (1942); Malone, Contributory Negligence and the Landowner Cases, 29 Minn. L.R. 61 (1945); Bohlen, The Duty of a Landowner Towards Those Entering His Premises of Their Own Right, 69 U. Pa. L. Rev. 142, 237, 340 (1921); Marsh,

The History and Comparative Law of Invitees, Licensees, and Trespassers, 69 L. Q. Rev. 182, 359 (1953). Illinois Central Railroad Co. v. Arnola, 78 Miss. 787, 29 So. 768 (1901), was not a "trap" case, the facts are sparsely stated, and it must be read along with the subsequent Mississippi cases, which have modified *Arnola's* apparent holding.

## IV.

(**Hn 7**) In the instant case, the jury was warranted in finding that Mrs. Conner was a licensee privileged to enter or cross the parking strip by virtue of Marlon's implied consent or permission; and that Marlon failed to use reasonable care to discover to her, to warn her, of the unguarded, abandoned stairway adjacent to the parking apron. The manifestly misleading nature of the Gammel sign, to a person on Marlon's parking strip, was a condition of fact relating to Marlon's maintenance of the unguarded stairway.

These and other surrounding circumstances could be considered by the jury. Among them also would be the proximity of the stairs to the parking strip and the public sidewalk; the general use by the public of that area for parking at night; the similarity of the pavement on the strip to that of the sidewalk; the evidence as to general use by the public of this area; the frequency with which licensees could be expected to avail themselves of the license; and the misleading nature of the Gammel sign pointing toward Marlon's abandoned stairway. These and other factors would bear on the question of what, if any, precautions reasonable care would require. The jury could conclude that, under all of the circumstances, there was a likelihood that a member of the public would use the area at night, and a consequent probability of harm to such a licensee. 2 Harper & James, p. 1472. The owner's duty extends to any danger that

the licensee cannot reasonably be expected to observe and avoid. 2 Harper & James, p. 1473.

(Hn 8) The licensee must show defendant's knowledge of the dangerous pitfall, but this may be done circumstantially. No witness for Marlon denied this knowledge. (Hn 9) The testimony by plaintiff's witness Patterson and the photographs, showing the debris and grass growing in the steps, and stating that the steps were closed at their base many years ago, is sufficient evidence of knowledge by the defendant, that it knew or should have known of the condition. Many circumstances may point forward to the probability that defendant has knowledge of the condition, including the direct exposure of the fact to his senses, and the intrinsic quality of the condition. 2 Wigmore, Evidence, Secs. 245, 252 (3rd Ed. 1940); James, 63 Yale L. J. at 608-609.

(Hn 10) Appellant says that immediately before her fall, Mrs. Conner had actual knowledge of the abandoned, closed condition of the steps. However, she was exposed to this dangerous condition through the negligent failure of defendant to either notify her of it or to block the stairway. Moreover, even if plaintiff were contributorily negligent in trying to ascend the stairs, she would not be barred under the comparative negligence statute, where defendant failed to take reasonable precautions to prevent injury to a licensee under conditions constituting a concealed pitfall or trap, and placed her in that situation. 2 Harper & James, pp. 1496-1497; James, 63 Yale L. J., at 630-631.

Affirmed.

*McGehee, C. J., and Kyle, Rodgers and Jones, JJ.,* concur.