Kevin W. DUMAS, Plaintiff,

v.

**PIKE COUNTY, MISSISSIPPI, a Political Subdivision of the State of Mississippi, and Julius O'Quinn, an Individual, Defendants.**

Civ. A. No. J85–0401(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

May 7, 1986.

Donald R. Rogers, J. Robert Ramsay, Bryant, Stennis & Colingo, Hattiesburg, Miss., for plaintiff.

Eve Gable, Michael K. Randolph, Bryan, Nelson, Allen Schroeder & Randolph, Hattiesburg, Miss., Michael W. Ulmer, Watkins & Eager, Jackson, Miss., Norman B. Gillis, Jr., Gillis & Gillis, McComb, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This diversity case is before the court on similar motions by defendants Pike County, Mississippi, a political subdivision of the State of Mississippi (County), and Julius O'Quinn, an individual, for summary judgment. Plaintiff Kevin W. Dumas filed timely responses to the motions, and the court has considered the memoranda with attachments submitted by the parties. The court will herein address the merits of both motions.

On July 11, 1982, Kevin Dumas and two friends traveled to the Bogue Chitto Water Park in Pike County, Mississippi for a day of outdoor recreation. Dumas, a resident of Mobile, Alabama, had never visited the park before that day. The Bogue Chitto River meanders in and out of park property on its northern, eastern and southern borders. The park rents inner tubes and canoes to patrons for use in floating the river, and Dumas and his friends rented inner tubes on July 11 for that purpose. The river channel forms a horseshoe bend from the northeastern section of park property to the southern section. It appears that renters enter the river from a picnic area in the northeastern section and float the length of the horseshoe bend to emerge at a boat ramp in the southern section. It is a short walk from the boat ramp area back to the picnic area. The park's property line, however, cuts through the base of the horseshoe, leaving approximately one-third of the length of the horseshoe bend outside park property. On July 11, 1982, no signs were posted along the river to advise floaters that they were leaving or re-entering park property.

Dumas and his friends embarked upon the river at the picnic area. After floating through approximately three-quarters of the horseshoe bend, they came upon an area of the river known as "the falls." There a sand bar extending under the river channel forced the upstream water to pool before rushing down the length of the underwater protrusion, forming a Mississippi version of rapids. Just before the falls on the south side of the river there was a clay embankment, from six to ten feet in height, from which swimmers apparently jumped or dived into the river. Dumas and his friends emerged from the river below the embankment. It is undisputed that a well-worn foot path led from the river to the heights of the embankment, that there were two earthen "platforms," one ten feet and another five or six feet above the river surface, from which swimmers jumped into the river, and that steps or foot holes were worn into the embankment which aided in scaling it. Dumas testified in his deposition that he swam beneath the steep wall of the embankment to assure himself that the water depth was sufficient for diving and that he "went down underwater" and could not touch the bottom. Thus assured, he climbed the embankment to the lower earthen platform, from which he had seen several people, including one of his friends, dive into the water. Dumas performed a "deep dive" and his head struck the river bottom, causing severe neck injuries. He was rendered a quadriplegic.

At the time of his injury, Dumas believed that he was on park property. It is apparent from the record, however, that the embankment from which he dived into the river was on the property of defendant Julius O'Quinn. Although O'Quinn asserts that his land was posted, Dumas avers that he saw neither a posted sign nor any sign prohibiting diving or warning swimmers of the dangers in diving from the embankment. It further appears from the record that O'Quinn was aware of the use of his land by persons floating the river from the water park; indeed, over one twelve-hour period during the summer of 1982 O'Quinn and others had counted as many as 200 persons traversing his land in the area of the falls.

In his original complaint in this cause, Dumas sought actual and punitive damages against the Pearl River Basin Development District (District), the County and O'Quinn under the theories of strict liabili-

## 134

ty in tort[1] and negligence. The District was previously granted summary judgment on the ground of sovereign immunity. *Dumas v. Pearl River Basin Development Dist.*, 621 F.Supp. 960 (S.D.Miss.1985). On the instant motions for summary judgment, the court must determine whether Dumas has framed any genuine issues of material fact with regard to a possessor's liability for conditions existing on his land sufficient to withstand judgment as a matter of law. The court is of the opinion that he has done so as to both defendants. The motions of the defendants will be addressed separately.

### PIKE COUNTY

The land comprising the Bogue Chitto Water Park is owned by the Pearl River Basin Development District but is run on a day-to-day basis by employees of the County. Maintenance of the park is the responsibility of the County. Pike County paid premiums on and had in effect in July 1982 a liability insurance policy, and Dumas is statutorily entitled to pursue a tort recovery from the County to the extent of such liability coverage. Miss.Code Ann. § 19-7-8 (Supp.1985).

The County contends that summary judgment is proper in this case because of an absolute assumption of risk defense provided it in Miss.Code Ann. § 51-1-4 (Supp. 1985). The statute, passed in April 1972, establishes what constitutes a "public waterway" within the state and the respective rights of the public and the riparian landowners with regard to activities on such waterways. § 51-1-4 reads in pertinent part:

> Such portions of all natural flowing streams in this state having a length of not less than five miles and which have an average depth along the thread of the channel of three feet for ninety consecutive days in the year and which have an average width at low water of not less than thirty feet, shall be public water-

ways of the state on which the citizens of this state and other states shall have the right of free transport and the right to fish and engage in water sports. Such persons exercising the rights herein granted shall do so at their own risk and such persons shall not be entitled to recover any damages against any person, firm or corporation for any injury to or death of persons or damage to property arising out of the exercise of rights herein granted unless such persons would have been entitled to recover such damages against such person, firm or corporation under the laws of this state prior to the enactment of this section....

■ The Bogue Chitto River is a "public waterway" within the meaning of § 51-1-4. The County argues that it cannot be reasonably denied that Dumas was engaged in "water sports" within the meaning of the statute, a contention the court will discuss further herein. It is undisputed that, at least from the time Dumas entered park property until his feet parted the waters of the Bogue Chitto, he occupied the status of a business invitee. *Lucas v. Mississippi Housing Authority No. 8*, 441 So.2d 101, 103 (Miss.1983). As a business invitee, the County owed Dumas the duty to keep the premises in a reasonably safe and suitable condition, or to warn him of any dangerous conditions which existed and were reasonably discoverable by the County. *Downs v. Corder*, 377 So.2d 603, 605 (Miss.1979).

■ In response to the County's statutory argument, Dumas seizes upon the "unless" language of § 51-1-4. In what can best be described as a strained interpretation of the statute, Dumas argues that the "unless" language exempts from the operation of the statute all causes of action for persons injured on all state waterways that were previously deemed "navigable" under Mississippi law and therefore open to the public for recreation. Thus, because the Bogue Chitto River was a pub-

---

**1.** Plaintiff's strict liability in tort claim, which seems to be premised upon an interpretation of a landowner's liability for maintenance of an unnaturally dangerous condition on his land, is unsupported by authority or argument and is dismissed without further discussion.

lic waterway prior to enactment of the statute and because the primary purpose of the statute was to open up previously non-navigable state waterways for public use, Dumas concludes that the "unless" language saves all causes of action accruing on waterways that were open to public use before April 1972. The court cannot agree with such interpretation which grants the protection of the statute to landowners along some waterways and makes it meaningless as to others. An exemption to the operation of a statute will not be implied except to prevent absurd results or consequences obviously contrary to the policy of the enactment as a whole. *Delta and Pine Land Co. v. Peoples Gin Co.,* 546 F.Supp. 939, 943 (N.D.Miss.1982), *aff'd and remanded,* 694 F.2d 1012 (5th Cir.1983). Section 51–1–4 has not yet received judicial construction, but a reasonable interpretation of the "unless" language of the statute is as a savings clause, excluding from operation of the statute any causes of action which accrued prior to April 20, 1972, the effective date of § 51–1–4. Mississippi Laws, 1972, Chapter 361 § 2. Dumas' cause of action accrued on the date of his injury, July 11, 1982, and the statute's assumption of risk provision, if applicable, would bar his claim.

 The court, however, is of the opinion that a question of fact exists concerning responsibility for the condition of the land along the Bogue Chitto River. The court's duty in construing § 51–1–4 is to ascertain and give effect to the intent of the legislature, derived from the plain language of the statute. *See Clark v. State ex rel. Mississippi State Medical Association,* 381 So.2d 1046 (Miss.1980). The obvious legislative intent behind § 51–1–4 was to encourage free public use of the waterways of the state for recreation by elimi-

nating the conflicting interests of the riparian landowners at least insofar as the actual streams of the waterways are concerned. In exchange, the riparian landowners were granted an absolute assumption of risk defense to tort liability for accidents occurring in the waterways. As a general rule of statutory construction, statutes in derogation of the common law are to be strictly construed [2] and are not to be extended beyond their plain language in light of the purposes the legislature sought to serve. *Quarles v. St. Clair,* 711 F.2d 691, 704 (5th Cir.1983). Nothing in § 51–1–4 relieves a landowner of liability for maintaining a dangerous condition on his *land.* It is not anomalous or contrary to the legislative intent to reason that if Dumas had been injured while floating the rapids or in a skiing accident occurring in the stream proper, both the County and O'Quinn would have been shielded from liability by the statute. But as to negligence occurring *outside* the waterway stream which may have caused or contributed to Dumas' injury, the court concludes that the statute offers no absolute bar to recovery.

 It is likewise a false distinction to assert that Dumas was actually injured in the stream, where his head smashed against the river bottom, or that because he was engaged in "water sports" within the meaning of the statute, his action is barred regardless of the source of the negligence causing his injury. That the injury may have occurred in a place wherein the defendant had no control and therefore no liability is irrelevant if that defendant furnished a condition and put in motion an agency through which the injuries were inflicted. *See Simmons v. Amerada Hess Corp.,* 619 F.2d 440 (5th Cir.1980). As a matter of proximate causation, if the alleged negligence on the part of the defend-

---

**2.** In *McCluskey v. Thompson,* 363 So.2d 256, 261–62 (Miss.1978), the Mississippi Supreme Court undertook to limit this rule of statutory construction by quoting Dean Roscoe Pound in "his monumental work, *Jurisprudence*" to the effect that "[t]he proposition that statutes in derogation of the common law are to be construed strictly has no analytical or philosophical

justification." *McCluskey* is a workers' compensation case and thus involved the vast remedial purposes of the compensation scheme. Prior to *McCluskey,* Mississippi adhered to this proposition and this court accepts it as a general rule. *See Mississippi Milk Commission v. Winn-Dixie Louisiana, Inc.,* 235 So.2d 684, 689 (Miss.1970).

ant is predicated upon an action or inaction prompted by knowledge, actual or implied, of facts which make the result of his conduct not only the probable result but also the result which he should, in view of the facts, have reason to anticipate, he may be found liable regardless of the place wherein the injuries caused by the negligence became manifest. *See Sprayberry v. Blount,* 336 So.2d 1289 (Miss.1976). The asserted negligence in this case is in the maintenance of the land from which Dumas dived into the Bogue Chitto River and the failure to post adequate warnings thereon. His dive and resulting injuries were foreseeable consequences flowing from such alleged negligence. The court obviously does not reach issues of contributory negligence or the open and obvious nature of the danger in Dumas' accident. Simply stated, however, the court will not extend the protection of the statute beyond the boundaries of the waterway. Thus, a question of fact concerning premises liability remains in this case sufficient to defeat summary judgment.

■ The County next argues that it cannot be liable for an injury occurring off its premises. As stated, the clay embankment from which Dumas dived was apparently on the property of Julius O'Quinn. The record in this cause is bereft of any maps or other documentary evidence indicating the property lines of the park and surrounding landowners, or how close the falls area is to park property. Contrary to the contention of the County, the fact that the injury occurred on the property of another is not an absolute defense in this case. The duty of an occupier or owner of a premises to an invitee can extend to the entrance of the property, to a safe exit after the purpose of the visit is concluded, and to all parts of the premises to which the purpose may reasonably be expected to take him. *Banks v. Hyatt Corp.,* 722 F.2d 214, 222 (5th Cir.1984) (quoting W. Prosser, *Law of Torts* § 61, at 392 (4th ed. 1975)). There is a heightened duty to an invitee when there exist on the land dangerous conditions known to or discoverable by the possessor. *See Restatement (Second)*

*Torts* § 343 and comment. These general principles of premises liability are not conditioned upon the defendant's actually owning or holding title to the land. A "possessor" of land can include one in occupation of land with the intent to control it. *See Restatement (Second) Torts* § 328E. If the landowner treats the neighbor's property as an integral part of his, the lack of formal title is immaterial. *See Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 914 (7th Cir.1985). The court would not imply that there is, in the usual case, a duty imposed on landowners who invite the public onto their property to inspect their neighbor's property for dangerous conditions. *See Steadman v. Spiros,* 23 Ill.App.2d 69, 161 N.E.2d 590 (1959). Here, however, the property around the falls, including the clay embankment, was being used in a manner entirely consistent with the purpose of the invitation embodied in the rental. Both O'Quinn and park officials were aware of the use of the land around the falls, yet apparently did not warn of any dangers. Additionally, the County was in the best position to inform or warn patrons of dangers not otherwise apparent to the reasonably cautious person. Therefore, the court concludes that there is an issue of fact in this case as to whether the County exercised such control over the land around the falls to assume premises liability thereon, and whether any duty arising out of such occupation was breached.

### JULIUS O'QUINN

■ O'Quinn moves for summary judgment on both statutory and common law grounds. By supplemented memorandum, he asserts that he is shielded from liability by the assumption of risk language of Miss.Code Ann. § 51-1-4 (Supp.1985). The court rejects this argument for the reasons stated previously with reference to the motion by the County. Secondly, O'Quinn cites the court to Miss.Code Ann. § 89-2-1 (Supp.1985), which reads:

The purpose of this chapter is to encourage persons to make available to the

public land and water areas for outdoor recreational purposes. A lessee or owner who opens a land or water area to the public for outdoor recreational purposes shall not, by opening such land or water for such use:

(a) Be presumed to extend any assurance that such land or water area is safe for any purpose;

(b) Incur any duty of care toward a person who goes on the land or water area; or

(c) Become liable or responsible for any injury to persons or property caused by the act or omission of a person who goes on the land or water area.

The foregoing applies, whether the person going on the land is an invitee, licensee, trespasser or otherwise.

Miss.Code Ann. § 89–2–7 (Supp.1985), under the heading "Application of Chapter", reads:

The provisions of this chapter shall not apply if any fee is charged for entering or using any part of such land or water outdoor recreational area, or if any concession is operated on said area offering to sell or selling any item or product to persons entering thereon for recreational purposes. Said chapter shall not apply unless public notice of the availability of such lands for such public use shall have been published once annually in a newspaper of general circulation in the county where such lands are situated.

O'Quinn urges the court to read the last sentence of § 89–2–7 out of the statute, as such is only a matter of constructive notice and formality and should not be considered "magic". The court agrees with O'Quinn that the statute indicates a laudable legislative purpose to encourage landowners to open up their lands for public enjoyment; however, absent legislative or any judicial guidance from a Mississippi court, the court cannot regard a section entitled "Application of Chapter" as mere surplusage. O'Quinn does not argue that he made any attempt to comply with the statutory notice provision. Therefore, the court must determine that the protection of § 89–2–1 is not available to him.

O'Quinn lastly argues that Dumas was, as a matter of law, a trespasser on his land on July 11, 1982. A trespasser is one who enters upon another's premises without license, invitation or other right. *Hoffman v. Planter's Gin Co., Inc.*, 358 So.2d 1008, 1011 (Miss.1978). A landowner owes the trespasser only the duty to refrain from willfully and wantonly injuring him. *Hughes v. Star Homes, Inc.*, 379 So.2d 301, 304 (Miss.1980). Because he did not extend any license, invitation or other right to Dumas, and because there is no proof of willful or wanton conduct on his part, O'Quinn concludes that he assumed no duty whatever to Dumas.

The law of premises liability is not so restricted. In *Marlon Investment Co. v. Conner*, 246 Miss. 343, 149 So.2d 312, 315 (1963), the Mississippi Supreme Court recognized the general principle, now embodied in *Restatement (Second) Torts* § 330 (comment), that a license or permission to enter upon a premises can be established by proof of conduct in a particular case:

A licensee is a person who is privileged to enter upon land by virtue of the possessor's consent or permission. Permission is conduct justifying others in believing the possessor is willing that they shall enter if they desire to do so. This consent may be expressed by acts other than words. The decisive factor is the interpretation which a reasonable man would put upon the possessor's acts, in the light of all surrounding circumstances, and the custom prevailing in the community.... This permission may, of course, be tacit, and may be manifested by the defendant's conduct, or by the condition of the land itself. It is often a question for the jury.

As stated previously, O'Quinn was aware that persons renting floating equipment from the water park regularly used his land around the falls for recreational purposes. In light of Dumas' allegations that he saw no posted or warning signs in the

immediate vicinity of the clay embankment and thought he was on park property, and that many persons were jumping from O'Quinn's land into the river, the court cannot conclude as a matter of law that Dumas was unreasonable in assuming that the possessor of the land was willing to permit him to enter the land for the purpose of diving from the clay embankment. It is, therefore, a question of fact as to whether Dumas was a licensee on the land of O'Quinn. The duty on the possessor of the premises under such circumstances is

> not to maintain the land in safe condition, but to disclose to the licensee any concealed, dangerous conditions on the premises of which the possessor has knowledge, and to exercise reasonable care to see that the licensee is aware of the danger.

*Marlon Investment Co. v. Conner*, 149 So.2d at 316. *See also Restatement (Second) Torts* § 342 (liability of possessors of land to licensees for injuries caused by dangerous conditions known to possessor).

 Furthermore, the Mississippi Supreme Court has created a "simple negligence" exception to the general rule—a landowner owes no duty to the licensee other than to refrain from willful or wanton negligence—that applies against a landowner whose (1) active negligence subjects a licensee to unusual danger (2) when the presence of the licensee is known. *Hoffman v. Planters Gin Co.*, 358 So.2d 1008, 1013 (Miss.1978). The allegations of plaintiff's complaint, supported by the present state of the record, sufficiently implicate this simple negligence standard to avoid summary judgment. In *Archie by Archie v. Illinois Central Gulf R. Co.*, 709 F.2d 287 (5th Cir.1983), a case dealing with the use of a well-worn foot path on the railroad's right-of-way and injury to a licensee thereon, the Fifth Circuit reversed the trial court's grant of summary judgment by utilizing this simple negligence standard. With particular relevance to the instant case, the court stated:

> In judging these matters, all the circumstances must be considered. Thus the frequency with which a licensee may be expected to avail himself of the license; whether he may be expected to be in a certain place or follow a recognized path rather than roam at large, and, if so, the proximity of that place or path to the danger; whether the nature of the premises would lead the licensee to expect more or less lurking danger; these and many other factors would bear on the question of what, if any, precautions reasonable care would require. As a general rule, more precautions are apt to be required where premises have been arranged for the entry of more or less unidentified segments of the public, or where a permissive, well-defined path is involved, than where the danger exists in ordinary private premises....

709 F.2d at 289–90 (quoting 2 F. Harper & F. James, *The Law of Torts* § 27.9 at 1472–73 (1956)).

Thus, the fact that the particular persons accepting the license to enter the property are unknown to the landowner, and the fact that they enter upon a foot path rather than over a way provided for such purpose by the landowner, *heighten* the duty of the landowner under the simple negligence standard. *Archie* indicates that summary judgment under these circumstances is inappropriate given the recent trend in the law, which Mississippi appears to be following, downplaying adherence to invitee-licensee-trespasser definitions of premises liability in favor of a general duty of reasonable care.

The court would reiterate that the issues discussed herein are presented in motions for summary judgment. As was stated in *Archie*, 709 F.2d at 290: "All of this does not mean, of course, that [Dumas] is entitled to recover." Construing all contested factual and legal issues in a light most favorable to plaintiff, as is proper on motions for summary judgment, the court concludes that sufficient dispute exists in the record and in the arguments presented in the motions to preclude judgment as a matter of law at this time.

Accordingly, it is ordered that the motions for summary judgment submitted by both defendants are denied.