# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01520-COA

ANDREW MCCONNELL                                         APPELLANT

v.

CARL HOGAN                                                 APPELLEE

DATE OF JUDGMENT:            10/05/2016
TRIAL JUDGE:                 HON. LEE J. HOWARD
COURT FROM WHICH APPEALED:   LOWNDES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      P. NELSON SMITH JR.
ATTORNEY FOR APPELLEE:       STEPHEN PIERCE SPENCER
NATURE OF THE CASE:          CIVIL - PREMISES LIABILITY
DISPOSITION:                 AFFIRMED - 01/23/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Andrew McConnell sued for injuries sustained when he dove into the swimming pool at Carl Hogan's home. The Lowndes County Circuit Court granted summary judgment to Hogan, dismissing McConnell's lawsuit. McConnell appeals, claiming summary judgment was improper because a genuine issue of material fact exists as to Hogan's duty to warn of a dangerous condition. Finding no genuine issue of material fact, we affirm.

## BACKGROUND

¶2.     On June 15, 2013, McConnell visited Hogan's residence to swim in his pool. While Hogan was away on vacation, Hogan's caretaker, Dave Johnson, gave McConnell's mother-in-law, Laurie Livingston, permission to use Hogan's pool. Laurie invited several other

family members to join her at the pool, including her fourteen-year-old son and stepson, Brian Tribble and Phillip Livingston, and her daughter, Amber McConnell. Amber invited her husband, McConnell, to join them.

¶3.     Johnson opened the access-restrictive gates surrounding Hogan's property to allow Laurie's guests in. Laurie, Brian, and Phillip arrived an hour before Amber and McConnell. Brian and Phillip began swimming in the pool.

¶4.     Hogan's pool is designed to resemble a lagoon. The pool has a deep portion in the middle, and two shallow sides on either end. A large rock protrudes from the water on one side of the pool, while another rock lays outside the pool's middle. When McConnell arrived at Hogan's residence, he went down to the pool. Brian showed McConnell the rock laying outside the middle of the pool, and then, dove off it, into the middle of the pool, while McConnell watched. Then McConnell headed toward that same rock. He quickly slid off his flip-flops and shirt; ran; and dove from the same rock, but toward a shallow end. The other guests, realizing McConnell was moments from diving into the shallow end, yelled to warn him. However, McConnell was already in the air, and it is unclear whether he heard them. McConnell, after diving, was injured. He suffered a cracked skull and broken neck/back. McConnell was able to exit the pool on his own, stating, "I'm a d--- idiot." Thereafter, he went to the local emergency room in Columbus, Mississippi, and was transported to Jackson, Mississippi, for further evaluation.

¶5.     McConnell filed suit on November 7, 2014, alleging he suffered injuries caused by Hogan's negligence. The circuit court granted summary judgment in favor of Hogan.

2

McConnell has timely appealed to this Court.

## DISCUSSION

¶6. The standard of review for summary judgment is de novo. *Hudson v. Courtesy Motors Inc.*, 794 So. 2d 999, 1002 (¶7) (Miss. 2001). Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). All evidence is viewed in the light most favorable to the nonmoving party. *Travelers Prop. Casualty Corp. v. Stokes*, 838 So. 2d 270, 273 (¶9) (Miss. 2003). In reviewing the motion, the court considers "all admissions, answers to interrogatories, depositions, affidavits, and any other evidence, viewing the evidence in a light most favorable to the non[]movant." *Owen v. Pringle*, 621 So. 2d 668, 670 (Miss. 1993).

¶7. The analysis of premises liability involves three steps. *Titus v. Williams*, 844 So. 2d 459, 467 (¶28) (Miss. 2003). The first step is to classify the status of the person as an invitee, licensee, or trespasser. *Id.* The second step is to assess, based on the injured party's status, the duty owed to the injured party. *Id.* The third step is to determine whether the landowner breached his duty to the injured party. *Id.*

### I. Status

¶8. An invitee enters "the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." *Corley v. Evans*, 835 So. 2d 30, 37 (¶21) (Miss. 2003). A licensee, however, enters "the property of another for his own convenience, pleasure, or benefit pursuant to the license or implied permission of the

3

owner." *Id.* The status of a particular plaintiff can be a jury question, but where the facts are not in dispute, the classification becomes a question of law for the trial court's determination. *Little ex rel. Little v. Bell*, 719 So. 2d 757, 760 (¶17) (Miss. 1998).

¶9.     Here, McConnell entered Hogan's property for his own pleasure, at the invitation of his wife. Hogan derived no benefit from McConnell's presence, nor was Hogan aware McConnell even visited his pool. McConnell therefore entered Hogan's property as a licensee.

## II.     Duty of Care

¶10.     In general, a landowner owes a duty to a licensee to refrain from willfully or wantonly injuring him. *Cade v. Beard*, 130 So. 3d 77, 82 (¶20) (Miss. 2014). "Willful and wanton" are defined as "knowingly and intentionally doing a thing or wrongful act." *Id.* at 82-83 (¶20) (quoting *Vaughn ex rel. Vaughn v. Estate of Worrell*, 828 So. 2d 780, 783 (¶13) (Miss. 2002)). In addition, a landowner must "not . . . set traps for [a licensee] by exposing him to hidden perils." *Marlon Inv. Co. v. Conner*, 246 Miss. 343, 350, 149 So. 2d 312, 315 (1963). Within the meaning of this rule, a "trap" is "a danger [that] a person who does not know the premises could not avoid by reasonable care and skill." *Id.* at 352-53, 149 So. 2d at 316 (citation omitted). "The duty is not to maintain the land in [a] safe condition, but to disclose to the licensee any concealed, dangerous conditions on the premises of which the owner has knowledge, and to exercise reasonable care to see that the licensee is aware of the danger." *Id.*

## III.     Breach

¶11. Since McConnell entered Hogan's premises as a licensee, Hogan owed McConnell the duty to refrain from willfully or wantonly injuring him, and not to set traps for him by exposing him to hidden perils. *Id.* The record reflects Hogan had no knowledge of McConnell's presence at his pool, and there is no evidence showing Hogan designed the pool with the intent to injure guests. Accordingly, Hogan did not willfully or wantonly injure McConnell. We thus turn to whether Hogan's pool was a hidden peril.

¶12. McConnell argues the unusual nature of Hogan's pool made its depth a hidden peril and asserts his injury could have been easily avoided through placement of "no diving" signs or depth markers. "[A]s [the Mississippi Supreme Court] has previously stated, the dangers of a swimming pool are obvious." *Handy v. Nejam*, 111 So. 3d 610, 615 (¶15) (Miss. 2013) (citing *Howze v. Garner*, 928 So. 2d 900, 904 (¶17) (Miss. Ct. App. 2005)). The record reflects McConnell was an adult with swimming experience; there was no diving board at the place from which he dove; and McConnell dove into the water head-first without making any investigation to determine the pool's depth. We therefore find Hogan's pool did not contain a hidden peril because McConnell could have avoided diving into the shallow end by using reasonable care and skill. *Marlon*, 246 Miss. at 353, 149 So. 2d at 316. Further, "[a] guest assumes the ordinary risks [that] are attached to the premises." *Raney v. Jennings*, 248 Miss. 140, 148, 158 So. 2d 715, 718 (1963). "A host merely offers his premises for the enjoyment of his guests with the same security [that] the host and members of his family who reside with him have." *Id.* Because no hidden peril existed, Hogan's duty did not include placement of depth markers or warning signs at his pool, as neither Mississippi statutes nor

5

case law requires such a duty. We find that the trial court properly granted summary judgment in favor of Hogan.

## CONCLUSION

¶13.    McConnell was a licensee of Hogan. A landowner owes a duty to licensees to refrain from willfully and wantonly injuring them, and to warn of hidden dangers and perils. Hogan was unaware of McConnell's presence on his premises and did not willfully or wantonly injure McConnell. Further, Hogan's pool did not contain a hidden peril because Hogan should have appreciated the risk of diving into an unfamiliar pool without making an inquiry as to its depth. The circuit court properly granted summary judgment in favor of Hogan.

¶14.    **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., CARLTON, FAIR, WILSON AND TINDELL, JJ., CONCUR.  IRVING, P.J., AND WESTBROOKS, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  BARNES, J., NOT PARTICIPATING.**